# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## In Re Petition of Mutual Benefit Company of Pennsylvania for Dissolution. Rosa B. Schoneman's Appeal.

*Evidence—Presumption of death.*

Where a person leaves his home and place of residence for temporary purposes and is not seen, heard of, or known to be living for the term of seven years thereafter, he is presumed to be dead; but in such case the presumption of life continues and the presumption of death does not arise until the expiration of seven years from the time of disappearance, unless there is evidence that the person was, at some particular date, in contact with a specific peril as a circumstance to quicken the operation of time.

A member of a mutual benefit association suddenly disappeared under circumstances of such a character as to refute the theory of abandonment of family, friends and business. Shortly after his disappearance an assessment became due, and not being paid, his name was stricken from the list of members. The widow subsequently claimed death benefits. There was nothing to show that the member had been exposed to any specific peril. *Held*, (1) that he was presumed to be alive until the expiration of seven years after his disappearance; (2) that the presumption of death did not begin to run until the limitation of the presumption of life; (3) that the burden was on the widow to show that her husband was dead at the time his name was stricken from the list of members; (4) that in the absence of such proof the association was justified in striking his name from the list of members; (5) that the widow was not entitled to recover.

Argued Jan. 31, 1896. Appeal, No. 20, July T., 1895, by Rosa B. Schoneman from order of C. P. No. 2, Phila. County, Sept. T., 1893, No. 1017, dismissing exceptions to auditor's

report. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Affirmed.

Exceptions to auditor's report distributing estate of the Mutual Benefit Association of Pennsylvania.

The auditor, Silas W. Pettit, Esq., reported as follows :

Mr. Samuel B. Huey, on behalf of Mrs. Rosa B. Shoneman presented a claim upon certificate of membership issued to her husband, Raphael A. Schoneman, No. 441, dated March 25, 1876, for the sum of $4,000, with interest from the 10th day of October, 1881, under the following circumstances : Mr. Schoneman was, on the 10th day of October, 1881, a member of the firm of James Thompson & Co., dealers in and manufacturers of twines and similar articles, doing business at No. 86 Leonard street, in the city of New York, and at that time living at Fort Washington, in that city. He left his home on the morning of Monday, October 10, 1881, at about half-past 7 o'clock, to go to his place of business, with the expectation of taking the 4 o'clock train on that afternoon for Boston, and of returning therefrom on Wednesday, October 12, and took with him a small satchel with some collars and cuffs and necessary toilet articles for such an expected absence. He did go to his place of business, and left there about 3 o'clock in the afternoon, having first drawn $25.00 in currency for his expenses and having with him, so far as known, no more than $50.00, with the announced intention of taking the elevated railroad to the Forty-second street station, there to take the 4 o'clock train to Boston, and from that time to this has not been heard of, nor has any trace of him been discovered. Mr. Schoneman was a man of regular habits, whose relations with his wife and child were of the happiest and most affectionate kind, his business was fairly successful, and his financial affairs, after his disappearance, were found to be perfectly regular, and in entire accordance with the appearance held out to the world, namely, that of a man not only abundantly solvent, but possessed of some means beyond his liabilities.

Every inquiry and method of search reasonably possible were adopted by his family and friends to discover his whereabouts, but entirely without avail. All assessments due by Mr. Schoneman to the Mutual Benefit Company, prior to October 10, 1881, had been paid, and nothing was due by him on that account

until the assessment payable March 7, 1882, which assessment and all subsequent assessments remain unpaid, and after notice, the name of Mr. Schoneman was stricken from the rolls of the Mutual Benefit Company on or about May 1, 1883, for default in payment of assessments, pursuant to the regulations of the company in such case made and provided.   Mr. Schoneman had made no designation of the beneficiary entitled to receive the insurance in case of his death, and, therefore, under the rules of the association, it became payable to his wife, and about that no question is made.

Mrs. Schoneman made due claim upon the Mutual Benefit Company in the year 1883, and it was proved without objection, although believed to be immaterial, that the Mutual Life Insurance Company of New York about that time paid a policy for $10,000, issued by it on Mr. Schoneman's life upon the same facts proved before your auditor and which were entirely familiar to the Mutual Benefit Company and its counsel.   By agreement copies of the affidavits of Simon H. Stern, Rosa B. Schoneman, James Thompson, and Raphael Buchman, which were made some time in the year 1882, but are not dated or signed, were read in evidence before your auditor, and are attached hereto as exhibit X.

It did not appear before your auditor on exactly what date Mr. Schoneman's name was stricken from the roll of membership, but from some correspondence submitted it appears to have been on or about May 1, 1883, and from this statement of the case it therefore appears that the question to be determined is whether, upon the evidence presented, Mr. R. A. Schoneman was alive on May 1, 1883.   If so, he was clearly in default, and his name properly stricken from the roll of membership, and therefore no claim can be made against the company on account of his death; but if, on the other hand, he was dead at that time, then the right of his beneficiary had already matured, and the company had no right to strike him from the list of its members.

The point involved, although a curious one, is by no means novel, but has been frequently adjudicated.

The presumption of law is in favor of the continuance of life once shown to exist, but again, this presumption under certain circumstances yields to another, and the rule may be fairly stated to be that where a person leaves his usual home and

place of residence for temporary purposes and has not been seen, heard of, or known to be living for the term of seven years thereafter, the presumption is that he is not alive. This presumption arises from unexplained absence in connection with the surrounding circumstances, such as the failure of his family and friends to hear from him when his absence is under such circumstances as that it would be naturally expected they should hear from him, and in such case the presumption of death arises without other proof than the mere fact of absence unexplained and inexplicable; but in such case the presumption of death does not arise until the expiration of seven years, which period has been adopted by the American courts in conformity to the rule adopted by the English courts in analogy to the statutes of 1 Jac. 1, and 19 Car. 2, as to bigamy and leases. This presumption is conceded to be of necessity arbitrary, but it is too well settled to need justification or further discussion.

On the other hand it also seems to be well settled that without direct proof the death of a particular person may be inferred and found from an unexplained absence accompanied by evidence that when last seen and heard from such person was in, or going to, a place of peril, as, for instance, in a ship which has been lost, or a place where there has been unusual destruction of life by natural or artificial causes, and in such case the death may be inferred in a period short of the expiration of the seven years.

For instance, where one Davie had been last heard from in November, 1851, in company with a number of persons who had undertaken a journey over land across the Indian country to California, and some of the party returned and reported that they had been fighting with the Indians and that they had concluded to give up the enterprise, but that the others, with whom Davie remained, had resolved to fight their way across. None of the party was ever heard of afterwards, and after the expiration of seven years the Supreme Court of the United States held that under such evidence it was not bound to accept as absolutely controlling the legal presumption in respect to the seven years, but should determine the case upon the hypothesis that Davie had died in or about November, 1851: Davie v. Briggs, 97 U. S. 628–636; see also Watson v. King, 1 Starkie, 121.

And this rule has been applied by some respectable American courts, even where there was not only no direct evidence of death, but no fact from which it could be presumed other than the unexplained absence itself.

Thus in an action on a policy of life insurance brought (apparently) in 1868, where the only evidence was that the insured had been last seen at the corner of Lake and Clark streets, in the city of Chicago, on September 25, 1866, and thereafter all trace of him had been lost, accompanied by evidence of want of motive to abandon his family and hide himself, it was held in effect that these facts and circumstances showing want of motive were such facts and circumstances relating to the character, habits, condition, attachments, prosperity, and objects in life which ordinarily control the conduct of men and are the motives of their action as are competent evidence from which may be inferred the death of one absent and unheard from, irrespective of the duration of such absence: Tisdale v. Conn. Mut. Ins. Co., 26 Iowa, 170.

And to the same effect see Cox v. Ellsworth (Sup. Ct. of Neb.), 26 N. W. Rep. 460, where the death of a person was permitted to be inferred after five years' unexplained absence.

These last cases may perhaps be considered as an extension of the rule adopted by the English courts, which is that although a person who has not been heard of for seven years is presumed to be dead, the law raises no presumption as to the time of his death; therefore if any one has to establish the precise time during those seven years at which such person died, he must do so by evidence, and can neither rely on the one hand on the presumption of death, nor on the other hand on the presumption of the continuance of life; that the presumption of law relates only to the fact of the death, and that the time of death, whenever it is material, must be the subject of distinct proof: Taylor on Evidence, section 157; Nepean v. Knight, 2 M. & W. 894; Re Phene's Trusts, L. R. 5 Ch. App. 139.

The claimant contends that under this rule, and especially as applied in Tisdale v. Insurance Co., 26 Iowa, 170, and Cox v. Ellsworth, 26 N. W. Rep. 160, above cited, the death of Mr. Schoneman can and should be inferred to have occurred on or about the date of his disappearance, and that in the absence of all motive for absenting himself from his family and his friends,

it can and should be inferred that he died from some unknown cause prior to the 12th day of October, 1881, at which date he should have returned to his home, according to his announced intention when last seen or heard from.

Without discussing the probabilities in this particular case, your auditor is unable to adopt this view. Obviously, the presumption of the death of a particular person within any time short of that fixed as the period at the expiration of which the presumption of death arises is mere guesswork, unless some circumstances other than the unexplained absence are shown, and while it may be said on the one hand that where a man leaves wife, family, and friends, business and property, without any known reason, it is so likely that he has died as to justify the finding of his death as a fact, yet on the other hand the same circumstances would equally preclude any idea of suicide, and it is at least equally improbable that he should have died suddenly from accident or disease, or been kidnapped and murdered without leaving some trace behind as that he should have voluntarily gone away ; and this is especially so where, as in the case under consideration, the insured was last seen in a perfectly safe part of a city like New York and about to undertake a journey to a city like Boston, and where no accident could have occurred on any of the means of conveyance he intended to use without the knowledge of many persons.

Accordingly the American rule seems to be that the presumption of life continues until the presumption of death arises ; that where there is no evidence at all upon the subject except only the unexplained absence, and so that the question must be determined upon the presumption of law alone, the person whose life is involved must be presumed to have lived until the expiration of the seven years from the time he was last seen or heard from, and then is presumed to have died.

"But the law as declared in England is different from the law which obtains in this country, so far as it relates to the presumption of the continuance of life. Here, as in England, the law presumes that a person who has not been heard of for seven years is dead ; but here the law, differing in this respect from the law of England, presumes that a party once shown to be alive continues to live until his death is proven or the rule of law applies by which death is presumed to have occurred—that

is, at the end of seven years. And the presumption of life is received in the absence of any countervailing testimony as conclusive of the fact, establishing it for the purpose of determining the rights of the parties as fully as the most positive proof." Per FIELD, J., Montgomery v. Bevans, 1 Sawy. 666.

And this is the rule in Pennsylvania:

" The presumption of death as a limitation of the presumption of life must be taken to run exclusively from the termination of the prescribed period; so that the person must be taken to have then been dead and not before. Indeed that is a necessary conclusion from viewing it, not merely as a limitation but as a countervailing presumption, which, as it does not supplant its predecessor before the end of the period, assumes no more than that the individual and the period expired together; and the predecessor being still in force to rule the case in respect to the time covered by it, is sufficient to maintain an inference of intermediate existence throughout. Thus the presumption of life continues till it is displaced by a more potent one, which, however, has no retroactive force; and indeed it would be of little use if it had, for to leave the time of the death still uncertain would leave a perplexity which it was its purpose to remove."

The court then cites and dissents from the rule of decision in Knight v. Nepean, 2 M. & W. 894, above cited, and points out that in many of those cases in which the fact of death has been found to have occurred before the expiration of the period which gives rise to the presumption of law, there were circumstances which brought the individual whose life was in question " in contact with a specific peril as a circumstance to quicken the operation of time," and therefore holds that the direction that there was evidence from which the jury might infer the death to have been at a time short of the period of legal presumption was erroneous. Per GIBSON, J., Burr v. Sim, 4 Whart. 150.

.  Your auditor therefore finds that Mrs. Rosa B. Schoneman has no right to recover against the Mutual Benefit Company, and no claim against the fund to be distributed.

The court dismissed exceptions to the auditor's report.

*Error assigned* was dismissing exceptions to the auditor's report.

*Samuel B. Huey*, for appellant.—The decision of the auditor and decree of the learned court below are based upon a misconception of the case of Burr v. Sim, 4 Whart. 150.

The appellant contends that Burr v. Sim, 4 Whart. 150, only decided that evidence showing a person unheard of for more than seven years to have begun such absence by a sea voyage, without evidence of a specific peril, is not even sufficient proof that death occurred during such voyage to warrant its submission to a jury; that the presumption of death from seven years' absence is not a presumption of law at all, but merely a rule of law paraphrased, and requiring no higher evidence to contradict it than other statutes of limitation : Eagle's Case, 3 Abb. Pr. 223; Tilghman v. Fisher, 9 Watts, 441; Moore v. Smith, 81 Pa. 182; Summerville v. Holliday, 1 Watts, 507; Hess v. Frankenfield, 106 Pa. 440; Diamond v. Tobias, 12 Pa. 312.

It was the duty of the auditor, first to understand the law, and second, to carefully consider and duly weigh every fact in evidence. The opinion shows that he misapprehended the law and dismissed the evidence without proper reflection, because it did not amount to direct proof of death, thus depriving the appellant of her undoubted right to have an unbiased finding upon the facts presented : Miller v. Beates, 3 S. & R. 490; Lancaster v. Life Ins. Co., 62 Mo. 121; Ryan v. Tudor, 31 Kan. 366; Reedy v. Millizen, 155 Ill. 636; Travelers' Ins. Co. v. Sheppard, 85 Ga. 780; Tisdale v. Connecticut Mut. Life Ins., 26 Iowa, 170; Cox v. Ellsworth, 18 Neb. 664.

*George P. Rich*, *Henry C. Boyer* with him, for appellee.—Burr v. Sim, and the subsequent cases of Bradley v. Bradley, 4 Whart. 173; Whiteside's App., 23 Pa. 114; Esterly's App., 109 Pa. 222, and Welch's App., 126 Pa. 297 (which latter cases are not referred to in appellant's argument), establish as absolutely as authoritative decisions may, that a legal presumption of the death of one who is missing or absent does not arise until the expiration of seven years from the time of disappearance, and that in the absence of sufficient evidence to justify a finding by a court or jury of actual death before the end of the seven years, the absentee must be presumed to have been alive during the whole of that time : Davie v. Briggs, 97 U. S. 628; 1 Am. & Eng. Ency. of Law, 37.

PER CURIAM, February 17, 1896:

Appellant's claim on the fund for distribution was based on a certificate of membership issued by the Mutual Benefit Company to her husband in 1876, coupled with averments of his death on October 10, 1881, and of her right as beneficiary to the sum of $4,000, payable on the happening of that event. The burden of establishing the fact of his death on the last mentioned date was on her; and for that purpose testimony was introduced to prove circumstances attending his disappearance on that day, and that, notwithstanding diligent efforts were made to ascertain his whereabouts, etc., nothing has ever been heard of him. It was also shown that his relations in life, —business, social, domestic, etc.,—were all of such a character as to refute the theory of abandonment of family, friends, business, and everything calculated to conduce to his comfort and happiness.

Guided by the rule adopted by this court in Burr v. Sim, 4 Whart. 150, and rigidly adhered to in subsequent cases, among which are Bradley v. Bradley, 4 Whart. 173 ; Whiteside's Appeal, 23 Pa. 114; Esterly's Appeal, 109 Pa. 222, and Welch's Appeal, 126 Pa. 297, the learned auditor and court below held that there was nothing in the facts of the case, as shown by the testimony, to warrant the presumption that appellant's husband died at the time of his disappearance, October 10, 1881, or at any time within less than seven years thereafter. In this, we think they were clearly right.

In Burr v. Sim, supra, Mr. Chief Justice GIBSON, after referring to the English rule, etc., said: "The presumption of death, as a limitation of the presumption of life, must be taken to run exclusively from the termination of the prescribed period; so that the person must be taken to have then been dead and not before. Indeed that is a necessary conclusion from viewing it, not merely as a limitation, but as a countervailing presumption, which, as it does not supplant its predecessor before the end of the period, assumes no more than that the individual and the period expired together; and the predecessor still being in force to rule the case in respect to the time covered by it, is sufficient to sustain an inference of intermediate existence throughout. Thus the presumption of life continues till it is displaced by a more potent one, which, however, has no retroactive force; and

indeed it would be of little use if it had, for to leave the time of the death still uncertain, would leave a perplexity which it was its purpose to remove. It is undoubtedly true that additional circumstances of probability may justify a presumption that the death was still sooner; but these, where they operate, introduce a distinct and dissimilar principle." To justify the introduction of that dissimilar principle, and its application in any case, there must be, as was afterwards said, some "evidence that the individual was, at some particular date, in contact with a specific peril as a circumstance to quicken the operation of time." In the case now under consideration that element is entirely absent. There is nothing in the testimony to show that appellant's husband, when last seen or heard of, was exposed to any such specific peril, or to any peril sufficient to take the case out of the operation of the general rule above stated. Mere general perils are not sufficient.

Burr v. Sim, supra, and subsequent cases, in the same line, have established a rule of property in this state which cannot be changed by us without disastrous consequences. Irrespective of that, however, it is more than doubtful whether any change or modification of the rule would be at all desirable.

Decree affirmed and appeal dismissed with costs to be paid by appellant.