Globe Mutual Life Ins. Association v. March.

## Globe Mutual Life Insurance Association v. Benjamin F. March, Executor, etc.

### Gen. No. 11,760.

1. Proofs of loss—*what does not invalidate.* One claiming the proceeds of an insurance policy and making proofs of loss upon account thereof, does not invalidate the same by adding after his personal signature the word "executor," where it appears that he took oath to such proofs and made claim for the proceeds of the policy in his own personal capacity.

2. Proofs of loss—*when sufficiency of, cannot be questioned.* Proofs of loss cannot be questioned by an insurance company where they have been delivered to it in apt time and are received and retained without objection.

3. False statements—*when do not invalidate insurance policy.* False statements contained in an application for an insurance policy will not defeat a recovery thereon where it does not appear that they were wilfully made and where they constituted, not a warranty, but a representation.

4. Motion to dismiss—*when particular defense waived by.* Where at the close of the evidence in a cause which originated before a justice of the peace a motion to dismiss is interposed, all grounds of defense other than those specifically stated in such motion are deemed to have been waived.

5. Premiums—*burden of proving non-payment thereof.* The burden of proving the non-payment of premiums accruing under an insurance policy is upon the defendant, where the plaintiff was in the possession of and produced the policy sued upon and established prima facie by evidence the other essentials to recovery.

Action commenced before justice of the peace. Appeal from the Circuit Court of Cook County; the Hon. Lockwood Honore, Judge, presiding. Heard in this court at the March term, 1904. Affirmed. Opinion filed February 20, 1905.

M. H. Hoey, for appellant.

Chester A. Grover, for appellee.

Mr. Presiding Justice Ball delivered the opinion of the court.

Appellee as executor of the estate of Francis J. O'Brien, deceased, recovered a judgment in a justice court against appellant upon a policy of insurance issued November 27,

1899, by appellant on the life of the deceased. Upon appeal
to the Circuit Court the cause was submitted to the court
and was tried by him. The court found the issues for ap-
pellee and assessed his damages at $200. Appellant now
brings the cause to this court.

Appellee on the trial offered in evidence the policy of in-
surance, proofs of death and letters testamentary. He also
showed service of the proofs of death upon the president
of appellant, and the date of death of the assured, and
rested. The attorney of appellant then moved to dismiss
the suit "for the reason that the policy provides that the
company will pay the amount stipulated in the schedule
below to the beneficiary under this policy within sixty
days after the acceptance at its office in the city of Chi-
cago of the proofs of death of the insured, made in the
manner, to the extent and upon the blanks required therein.
And the files show that this suit was commenced within
thirty days from the acceptance of the proofs of death by
the defendant." This motion was overruled, and an excep-
tion was duly taken.

Appellant then put in evidence the application for said
policy, signed by the deceased, and the report of the med-
ical examiner. It also offered evidence tending to prove
that the mother of insured died of consumption in the
winter of 1886, when the deceased was but eight years of
age; and that while the proofs of death were presented to
appellant shortly after the death of the insured, they were
not completed until December 9, 1902.

The errors assigned are : that the suit was prematurely
brought; that the deceased stated in his application his
mother died from " heart failure," when the evidence shows
that she died of consumption; and that it does not appear
the deceased paid the premiums according to the terms of
the policy.

The evidence shows that on or about November 1, 1902,
Charles S. Miller, an attorney, took the proofs of death to
Mr. Barry, the president of appellant, and served them
upon him; that the latter said " they would want the usual

sixty days before payment;" that witness went again to Mr. Barry and told him the sixty days were up and asked him what his intentions were; that the latter told witness there was an objection to the proofs, that he and his attorney had talked over—the name of appellee was signed without the word "executor" after it; that witness took the proofs and had the word added and again returned them; and that the proofs as originally prepared stated they were made by appellee "as executor named in the last will and testament of Francis J. O'Brien, deceased."

The objection to the proofs is extremely technical. Appellee swore to the proofs of death. That oath he took personally and not officially; and as he claimed the proceeds of the policy in his proofs as the executor of deceased, the addition of the word executor to his signature was a useless act. Again, the law is that when proofs of death of the insured are in apt time delivered to the insurance company, and they are received and retained by it without objection, the company cannot subsequently question their sufficiency. Great Western Ins. Co. v. Staaden, 26 Ill. 365; Hartford Fire Ins. Co. v. Walsh, 54 Ill. 168; Continental Life Ins. Co. v. Rogers, 119 Ill. 487; People's Fire Ins. Co. v. Pulver, 127 Ill. 249. Appellant, by neglecting to object to the proofs of death when they were delivered to it, and by then impliedly admitting its liability by claiming the usual sixty days before payment, waived the defect, if any there was, in these proofs. Therefore the period of sixty days which must elapse after the acceptance of proofs and before the institution of a suit upon the policy, began about November 1, 1902; and hence a suit commenced January 17, 1903, was not prematurely brought.

The second contention of appellant is that the answer of the insured, written down by the medical examiner, that his mother died in 1886 from "heart failure," when the evidence shows she died of consumption, is false, and that therefore the policy is avoided. It appears that when the mother died the assured was but eight years of age, and was not with her during the last two months of her illness.

It is not to be presumed that a child of such tender years can tell the cause of sickness. Dr. James H. Lyons, called by appellant, very reasonably answers this proposition by saying: "Well, if he was told, I think he could remember, but unless he was told he would not know." "Heart failure" is a very general term. In every death 'the heart fails, or ceases to beat. It appears to be used even by experts to cover all that class of cases where the real cause of death is obscure. The medical examiner must be presumed to have known the general and often vague use of this term. Had he desired more definite information, he could have asked another question.

In a similar case, against this same company, the assured answered to the question of the medical examiner, "How many brothers dead?" "None," when the fact was that one of his brothers had died in London, England, more than four years prior to the date of the application. The plaintiff in that case contended that the statement, though false, was not a warranty, but a mere representation, which, unless material, would not avoid the policy. The court say: "In the absence of explicit, unequivocal stipulations requiring such an interpretation, it should not be inferred that the insured or the appellee took a life policy with the distinct understanding that it should be void if any statements made in the medical examination should be false, whether the insured was conscious of the falsity or not. Moulor v. American Life Ins. Co., 111 U. S. 335. Whether or not the deceased knew of the death of his brother at the time of the application for insurance, was a question for the jury, and no evidence of such knowlege appears in the record. * * * In that case (the Moulor v. Am. Ins. Co.) the untrue statements were held to be representations, and not warranties, and we think, on the same reasoning, the answer here in question should be so held, and in the absence of proof by the Company of fraud or intentional misstatement on the part of the insured, the policy was not rendered invalid merely because the answer proved to be false." Globe Mutual L. Ins. Ass'n of Chicago v. Wagner, 188 Ill. 133.

So in the case at bar, the answer is a representation and not a warranty, and there is no proof that the assured knew that it was false.   It follows that the trial court committed no error in holding that the falsity of this answer, if it was false, did not avoid the policy.

The third contention of appellant is that there was no proof made by appellee of the payment of the premiums provided to be paid in the policy.   This cause came from the justice court.   The pleadings, therefore, were *ore tenus*. When appellee closed his case appellant interposed a motion to dismiss the suit.   It was then its duty to present to the judge, who was hearing the case without a jury, each and every ground it intended then, or at any future time, to urge in support of that motion.   Its counsel, in a somewhat extended and carefully worded statement, presented but one ground, and that an insufficient one.   By not stating its other defenses, if any it had, to the trial judge, or offering to prove the same, appellant precluded itself from raising such other defenses in this court.   Bates v. Bulkley, 2 Gilm. 389.

For the foregoing reasons the judgment of the Circuit Court is affirmed.

*Affirmed.*

ADDITIONAL OPINION BY MR. JUSTICE BROWN.

I concur in the decision of this case and in the opinion of Mr. Justice Ball, but I desire to add that I think that without reference to the course pursued by appellant's counsel below in his defense, the possession and production of the policy in question by the plaintiff and the proof of death, threw upon the appellant the burden of proving non-payment of premiums, if it had such a defense.   In other words, I do not agree with the contention of appellant's counsel that the burden of proving payment of the monthly premiums during the continuance of the policy would have rested upon the plaintiff as a condition of his recovery in any event.   Nor do I think The Continental Life Insurance Co. v. Rogers, 119 Ill. 474, authority for

such a proposition. No such question was before the court in that case. In that case the plaintiff assumed the burden voluntarily by producing the receipts of the company. The payment of the first premium must be proven in some form by the plaintiff, but the delivery of the policy by the insurer and its possession by the assured is *prima facie* proof of this payment.

The subsequent payments in a policy like this in question involve conditions subsequent, not precedent. Default in the payment avoids or forfeits the policy, and such avoidance or forfeiture is a defense which must be proven by the insurer. The contract of insurance on the life of the assured is not a monthly contract expiring at the end of each month and only renewed by the payment of another premium, as a fire insurance policy, for example, expires with the term for which the premium has been paid, and is only renewed by the payment of another such premium. It is, on the contrary, an entirety—a contract for life, and not from month to month. Each premium instalment is part consideration of the entire assurance for life. This seems to me plain from the language of the policy, which on its face provides that in consideration of the monthly payments mentioned in an appended schedule, the assured is received as a member of the association, and the policy of insurance issued subject to certain conditions on the back of the policy. On the back of the policy are contained conditions that the policy shall be void if any premium shall not be paid when due, but if it should become void in consequence of non-payment of premiums, it may be renewed, at the option of the insured, if not more than fifty-two premiums are due, upon payment of all arrears and the presentation of evidence satisfactory to the association of the sound health of the insured. This view also is sustained by the highest authority. New York Life Ins. Co. v. Statham et al., 93 U. S. 24–30.

This court, speaking through Mr. Justice Sears in Roberts v. Ætna Life Ins. Co., 101 Ill. App. 313, speaks of the payment of premiums by the insured as conditions " pre-

cedent or at least concurrent with the assuming of any obligation by the Insurance Company," *under terms such as the policy in that case contained.* But that policy was very different from the one at bar, and very explicit in declaring the contract to be not for life, but for a definite period.

On the other hand, this court has repeatedly held, in cases of benefit associations, that the burden of proving forfeitures of membership and benefits for non-payment of assessments is upon the association. Covenant Mutual Life Ass'n v. Tuttle, 87 Ill. App. 309; Railway Passenger & Freight Conductors M. A. & B. Ass'n v. Thompson, 91 Ill. App. 580; Supreme Lodge v. Matejowsky, 92 Ill. App. 387.

And although a difference may be claimed between assessment benefit companies and a mutual life insurance company in this regard, I do not think the difference renders inapplicable the principle which, in consonance with justice, puts the burden of proving any forfeiture of a contract once entered into on the party claiming it. It is a general rule that when the existence of a particular subject-matter or relation has once been proved, its continuance is presumed until proof be given to the contrary. Schroeder v. Trade Ins. Co. of Camden, 109 Ill. 157–163.

I am authorized to say that Mr. Justice Adams agrees with me in the view here indicated.