Roseberry, Appellant, *v.* Home Life Insurance Company.

Argued October 10, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Hyman Shane,* for appellant.

*John P. Connelly,* for appellee.

OPINION BY PARKER, J., January 31, 1936:

The defendant insurance company on May 16, 1927, issued an industrial policy of insurance on the life of Margaret Roseberry, payable to Charles Roseberry, her husband, as beneficiary. The contract of insurance was made in consideration of the delivery of the policy during the lifetime and good health of the insured and "the payment of the weekly premium hereinbefore stated [22 cents] to the Company or to its authorized representative on or before every Monday during the continuance of this contract, until the seventy-fifth birthday of the Insured." Margaret Roseberry died on July 14, 1933, and thereafter the beneficiary delivered to the company a certificate of the Bureau of Vital Statistics showing her death and cause of death. This suit was begun by Charles Roseberry, but thereafter he died and his administrator was substituted as plaintiff. The issue raised by the pleadings and proofs was whether the contract of insurance was terminated before the death of the insured by a failure to pay weekly premiums.

It was alleged in the affidavit of defense that the policy was "forfeited by her on account of the nonpayment of premium due on March 13, 1933," and that thereafter the policy was cancelled. On the trial of the cause the plaintiff offered, in addition to certain averments in the statement of claim, including payment of the first premium, not denied in the affidavit of defense,

the policy of insurance and rested. The defendant called its actuary who testified that the books of the company showed no payments after March 6, 1933, and that the policy therefore lapsed on March 13, 1933, no premiums having been paid after that date. In addition, the actuary stated that the surrender value of the policy at the date of forfeiture was sufficient to carry it until May 15, 1933, at which time all liability of the company ceased. The latter statement was a mere mathematical calculation which could be made by anyone from an examination of the policy. The plaintiff offered no testimony in rebuttal.

The trial judge charged the jury that the burden was on the defendant to establish the fact that the premiums were not paid and submitted that question to the jury which arbitrarily rendered a verdict for the amount of the policy less certain loans which had been made against it. Subsequently the court entered judgment n. o. v. for the defendant. In entering this judgment the lower court said: "There was no rebuttal of defendant's testimony nor was its credibility impeached on cross-examination. In our opinion defendant has met the burden of proof imposed upon it by law and was justified in lapsing the policy for nonpayment of premiums." The court also intimated that it would have granted a new trial if it had not entered judgment for the defendant. We are of the opinion that the conclusion reached was correct.

The appellant contends that the production of the policy of life insurance complete in all its terms and duly executed and in possession of the beneficiary at the time of her death, together with the admission of the company that the first premium was paid, made out a prima facie case; that the burden was then on the insurer to affirmatively prove its defense of nonpayment; that the company's proofs were by oral testimony; and that the question was therefore for the jury and their

verdict should not be disturbed. (Nanty-Glo Boro. v. Amer. Surety Co., 309 Pa. 236, 163 A. 523.) It therefore is a legal question that is involved, one of burden of proof.

Both the trial court and the appellant were in agreement to the effect that the burden of proving nonpayment was on the defendant, and they rely on the cases of Eaton v. N. Y. Life Ins. Co., 315 Pa. 68, 172 A. 121, and Brandis v. Empire State Life Assur. Soc., 315 Pa. 558, 174 A. 104. In each of these cases the question involved was the payment of the first premium which payments were acknowledged in the insurance contract. In the Eaton case the insured died before a second premium was due and in the Brandis case the several premiums due after the first payment were paid so that the real question considered and decided was the effect of such a receipt for the first premium. There could be no question that in such a situation a prima facie case would be made out by the production of the policy containing the receipt. In fact, the question involved was as to the right of an insurance company to contradict its receipt for the first premium. It was of such a situation that the Supreme Court was speaking when it used the language quoted by the trial court in its charge. So far as we have been able to discover, neither the Supreme Court nor this court has passed upon the question as to whether the burden of proving the nonpayment of premiums due subsequent to the first premium as a general proposition is on the insurer. In Crumpton v. Pittsburgh Council, 1 Pa. Superior Ct. 613, there was involved a question of the levying of an assessment by the insurer, and this court there held that the burden of proof was on the insurer "to make out its case—to show that this brother was in arrears for thirteen weeks within four weeks of the time of his death." Undoubtedly, the burden is on a fraternal or beneficial association to show that the assessments claimed to be in

arrears were made. However, the general weight of authority in other jurisdictions supports the proposition as stated in Ruling Case Law (14 R. C. L. 1437) : "The burden of proving the nonpayment of premiums [on policies of life insurance] is on the insurer." Also, see Hinchliffe v. Minn. Com. Men's Assn., 142 Minn. 204, 171 N. W. 776; Novosel v. Mid West Life Ins. Co., 276 S. W. 87; Petherick v. General Assembly O. A., 114 Mich. 420, 72 N. W. 262; Rousseau v. Brotherhood of Amer. Yeoman, 186 Mich. 101, 152 N. W. 939; Harris v. Sec. Life Ins. Co. of Amer., 248 Mo. 304, 154 S. W. 68; Liensny v. Metro. Life Ins. Co., 131 N. Y. Supp. 1087, 103 N. E. 1126; Thomas v. N. W. Mut. Life Ins. Co., 142 Cal. 79, 75 P. 665; Globe Mut. Life Ins. Assn. v. March, 118 Ill. App. 261; Elmer v. Mut. Ben. Life Assn. of Amer., 19 N. Y. Supp. 289, 34 N. E. 512; Fischer v. Ins. Co., 167 N. Y. 178, 60 N. E. 431. There is, however, authority to the contrary: Farrell v. Amer. Emp. Liability Ins. Co., 68 Vt. 136, 34 A. 478. It is also true that in many of the cases where the burden has been placed upon the insurance company there was involved a question of the levying of an assessment by a fraternal or beneficial association, and by the insurance laws of New York a policy is valid until forfeited and cannot be forfeited until the statutory notice has been given and the thirty days therein specified have elapsed without payment of the premium.

Assuming for the sake of argument only the correctness of the statement as contained in Ruling Case Law as a general principle applicable to an old line policy of life insurance in the usual form, we must at the same time give heed to the specific terms of the contract we are called upon to construe and take into account just what is meant by burden of proof, making out a prima facie case, and presumptions. This was a policy of industrial life insurance providing for weekly payments in small amounts, and it is a matter of common knowl-

edge that insurers in such cases frequently have their agents call upon the insured for the collection of the premiums which are paid in small sums. Having this practice in view, it was provided in the contract of insurance as follows: "All premiums are payable on Monday of each week, in advance, at the Executive Offices of the company, but may be paid to an authorized representative of the Company, *but payments to be recognized by the Company must be entered at the time of payment in the Premium Receipt Book belonging to this Policy.* If, for any reason, the premium be not called for when due by an authorized representative of the Company, it shall be the duty of the Policy holder, before said premium shall be in arrears four weeks, to bring or send said premium to the Executive Offices of the Company or to one of its district offices." (Italics supplied.) It was also provided that the benefits described in the policy should be paid "upon receipt of due proof of the fact and cause of the death of the Insured and the surrender of this Policy and the Premium Receipt Book during the continuance of this contract."

We are of the opinion that the rule as to burden of proof stated above does not apply under the circumstances present here. The parties had the right to make their own contract and they agreed that payments would not be recognized unless they were entered in a receipt book in possession of the insured, and that the benefits should not be payable until the policy and such receipt book were surrendered to the company. These were reasonable provisions as the apparent purpose was to fix a method of establishing the fact of payment; otherwise, the company might be called upon to prove a negative which would necessarily depend upon oral testimony. This company, according to the testimony of the actuary, had in force at the time 278,000 industrial policies which would require a large number of collectors. These would change from time to time, thus

rendering it very difficult to prove that payments were not made. This situation is radically different from that of an ordinary life policy where the payments are made once or twice a year and the company does not usually provide collectors. The plaintiff not only did not produce the receipt book and thus show the state of the account with defendant, but also failed to show any reason for not doing so or make any effort to prove payment in fact.

Professor Wigmore, in considering the tests proper for determining on whom the burden of proof rests, says (5 Wigmore on Evidence, §2486): "The truth is that there is not and cannot be any one general solvent for all cases. It is merely a question of policy and fairness based on experience in the different situations." Here we have a situation where, if the usual burden of proof rule is applied, the company would be called upon to prove a negative, and also a situation where it is peculiarly within the power of the plaintiff to show payment. These are by no means conclusive tests, but when taken with the condition of the policy it seems to us to point to but one conclusion, to wit, that as a matter of policy and fairness the burden should here be upon the plaintiff to either produce the receipt book or account for his inability so to do and follow that by proof of actual payment. This would seem to us to be the very least that could be expected of the plaintiff.

However, the defendant acquiesced in the position of the plaintiff and called its actuary who testified, after an examination of the books of the defendant company, that no payments of premium were received on account of this contract after March 6, 1927. (The receipt of this testimony is not assigned as error.) By so doing, the company but furnished proof to the effect that no payment had reached the treasury of the company.

Viewing the situation from another angle we arrive at the same result. Assume for the sake of argument

that the burden was here on the defendant company to show the nonpayment of the premiums due on and after March 13, 1933. The company offered proofs showing that the money had not reached the company and the plaintiff not only made no effort to show payment but failed to produce the receipt book which was fixed by the terms of the contract as the method of establishing the payment. We do not believe that any presumption of payment that might have arisen could stand in the face of this situation and that the lower court was correct in so holding. As was pointed out by Mr. Justice MAXEY in the case of Henes v. McGovern, 317 Pa. 302, 310, 176 A. 503: "There is considerable confusion of thought arising from the fact that the phrase 'burden of proof' is used indiscriminately as meaning either burden of proof or burden of producing evidence." The same Justice again in Watkins v. Prudential Ins. Co., 315 Pa. 497, 504, 173 A. 644, further said: "Presumptions are not fact suppliers; they are guide-posts indicating whence proof must come." Mr. Justice FIELD, in the case of Lincoln v. French, 105 U. S. 614, said: "Presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear."

As we have indicated, there was not only no effort made to prove payment in the manner provided for by the contract, but there was not a suggestion at the trial or on argument before this court that the plaintiff, if given an opportunity, could produce proofs of the payment of these premiums claimed to be in default. If such had been the case we might have naturally resorted to the power which this court has to award a new trial in the interest of justice. We are all of the opinion that the correct result was reached in the lower court.

Judgment affirmed.