### Ryan v. Prudential Insurance Company of America, Appellant.

Argued November 16, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Kendall H. Shoyer,* with him *Frederick J. Shoyer* and *Andrew C. Dana,* for appellant.

*J. George Lipsius,* for appellee.

OPINION BY CUNNINGHAM, J., March 16, 1939:

The action below was upon a policy of industrial life insurance issued by the appellant company on March 16, 1925, on the life of John Anderson. The appellee is the niece of the insured and the beneficiary named in the policy. The statement of claim averred that the insured disappeared sometime in May, 1925, while working on the Conowingo Dam, and had not been heard from since; that as more than eleven years had elapsed since his disappearance a legal presumption of his death had arisen.

The case was tried before a judge of the court below, sitting without a jury, who made a finding in favor of the beneficiary, and in his written opinion assigned as his reason therefor that the evidence was sufficient to establish an inference of the death of the insured at the time of his disappearance. The company's motion for judgment in its favor, n. o. v., was denied and it has appealed from the judgment entered upon the finding.

One of the contentions made by counsel for appellant is that appellee's claim was based upon the presumption of death arising from seven years' unexplained absence. Reference is made to the averments of the statement and to the demand for the principal amount of the policy, with interest only from May, 1932, seven years after the date of the disappearance. They complain that the court below entered judgment upon an entirely different theory from that upon which the case was tried—namely, that death was proved as of the date of the disappearance in 1925.

As we have reached the conclusion that appellee has not established her right to recover under either theory, it is now immaterial whether there was a variance between the pleadings and the proofs or the ground upon which judgment was entered.

It is obvious that appellee cannot recover on the ground of a presumption of death arising from seven years' unexplained absence, because the policy was not

in force at the end of that period. Indeed, she does not argue that such was the case. The presumption of death must be taken to run exclusively from the termination of the seven year period. In other words, the insured is presumed to have died at the end of the seven years and not before: *Burr v. Sim*, 4 Wh. 150, 171; *Mut. Benefit Co.'s Petition, Schoneman's Appeal*, 174 Pa. 1, 9, 34 A. 283. If, therefore, it was appellee's claim that insured presumptively died in 1932, it was incumbent upon her to show that the policy was still in force at that time. Since this was a policy of industrial life insurance which provided that "payments [of premiums] to be recognized by the company must be entered at the time of payment in the premium receipt book," the burden was on her to either produce the receipt book or account for her inability to do so, and follow such proof by evidence of actual payment: *Roseberry v. Home Life Insurance Company*, 120 Pa. Superior Ct. 450, 456, 183 A. 121.

No such proof was offered in this case. The evidence was that the insured had left this and several other insurance policies with one, Wesler, the owner of a hotel in Philadelphia where insured occasionally boarded. Wesler testified that the insured had frequently given him money with which to pay premiums, because the insured might not be around when the company's agent would call for the money; that he had mislaid the premium receipt book about the time the insured disappeared; that the insured had given him "a few dollars" immediately before he left to work on the Conowingo Dam; that while he did not remember the exact amount, he judged it was about three or four dollars; that the premiums on the four policies of which he had custody amounted to over one dollar a week; and that the sum of money left with him was sufficient only to pay the premiums for a period of a little more than three or four weeks. The period of grace for payment of premiums was four weeks.

It is clear from this testimony that, even if the most liberal allowance be made, there was proof of payment of premiums for only a short time after the alleged disappearance. This proof falls far short of showing that the premiums were paid up to 1932. It may also be noted that since the policy in suit was issued on March 16, 1925, the insured was not entitled to extended insurance upon lapse of the policy for non-payment of premiums, because such extended insurance became effective only after the policy had been in force for three full years or more.

We next consider whether there was evidence to support the finding that the insured had died at or about the time of his disappearance, at which time the policies may still have been in effect. It is true, as appellee states, that she did not necessarily have to rely on the presumption arising from seven years' absence; but that death might be inferred from the circumstances surrounding the disappearance, even though it was not directly proven. To establish death under such circumstances, however, there must be more than the mere fact of disappearance. As was said in *Fanning, Admrx. v. Equitable Life Assurance Society,* 264 Pa. 333, 337, 107 A. 715: "The jury may infer the absent person died before the expiration of the seven years, if it appear he encountered, within that period, some special peril, or came within the range of some impending or imminent danger which might reasonably be expected to destroy life."

The court in that case also quoted the following with approval: "The fact that there is a legal presumption of death after seven years' absence does not prevent an inference of death from absence of a shorter period where [there are] other circumstances which tend to force a conviction that death must have occurred, as that the person has encountered, or probably encountered, such perils as might reasonably be expected to destroy human life, and has been so situated that, ac-

cording to the ordinary course of things, he must have been heard of if he had survived."

Or, as expressed by GIBSON, C. J. in *Burr v. Sim,* supra, (p. 171), a jury may not be permitted "to presume the death to have been at an intermediate period, unless we discover in the case at least a spark of evidence that the individual was, at some particular date, in contact with a specific peril as a circumstance to quicken the operation of time."

What was the evidence as to the insured's earlier life and as to the circumstances immediately surrounding his disappearance? The appellee testified that her uncle was a rigger by occupation; that he had lived at her home off and on before her mother died; that he was living at Wesler's hotel immediately prior to May, 1925; and that she had last seen him in April of that year. He had worked on vessels when he was younger. The insured had not told her he was leaving for Conowingo. She found out after he had left that he was working on the dam and wrote to the persons building it, asking for information. She received a reply stating that they had no one working there by that name at the time the letter was received. The only other effort she made to locate the insured was to inquire at the Bureau of Missing Persons in Philadelphia. She did not write again to Conowingo, nor did she have any one institute a search at that place.

Wesler testified he had known the insured as a boarder at his hotel over a period of some eight years prior to his disappearance. He stated the insured had not remained continuously at the hotel over this period but, as he was a seafaring man, had taken trips from time to time, and some of these trips had lasted for periods longer than a month. The insured had informed him that he had obtained a job at Conowingo and, as stated above, had left with him a few dollars to take care of the premiums on his policies. He had not seen insured since that time.

Appellee's only other witness was Frank Blumquist. Blumquist had known the insured for about seven years prior to 1925, and had worked with him off and on as a rigger. He had also lived with the insured at Wesler's hotel and went to work with him at Conowingo, where he and the insured were employed as laborers. They lived in different barracks at the job. He saw the insured almost every day for about seven weeks. He last saw him one Saturday morning at the timekeeper's office, at which time the insured informed Blumquist he was going to collect his pay. He did not know where insured went after receiving his pay since he, Blumquist, was going to work and the insured was on another shift. He believed the date on which he last saw the insured was sometime in July, 1925. He also testified that the ground surrounding Conowingo was rather barren country.

This evidence does not, in our opinion, support an inference that the insured died either in May or July, 1925, or at any other definite time.

*Fanning v. Equitable Life Assurance Society,* supra, which is cited by the court below as a controlling authority, does not present an analogous situation. The facts in that case were that the insured left his home in Pennsylvania when about thirty-three years of age to go to Spokane, Washington. He was a healthy man who assisted in the support of his mother by sending her money from time to time after his departure for the west. He earned good wages, was without financial difficulties and had a happy, cheerful disposition. He showed constant concern for his mother and wrote her frequently while away from home. These letters abruptly ceased in August, 1908. Witnesses in the case testified that during that month a great forest fire was raging in the country near Spokane, in which many persons lost their lives; that the insured had informed one of the witnesses he was going to fight the fire; and that he was never heard of again, although inquiries

were made of the insured's brother and brother-in-law and other friends, all of whom were living in Spokane. After the insured failed to return, his clothes and mail were found to have been left at his boarding house.

It is true that there was no direct proof of the death of the insured involved in the Fanning case. However, there was sufficient evidence in that case upon which to rest an inference that the insured had met his death from the fire. This inference was supported, among other things, by these facts; he abruptly ceased corresponding with his family with whom previously he had been on affectionate terms; he was concededly placing himself in a position of great and known danger; he was never again seen by his intimates; and his belongings had not been removed from his lodgings.

No similar circumstances exist in the present case. The insured was not a man of regular habits, but had been accustomed to change his job frequently and to leave the city on numerous trips. He was not known to have been on intimate terms with his relatives, to have corresponded with them or to have contributed to their support. In fact, he did not even trouble himself to inform them that he was leaving for Conowingo. To us, there was nothing indicating that the insured had any ties with the past which were abruptly broken.

Nor were there any peculiar circumstances surrounding his actual disappearance. He was not in a position of peril when last seen. There was no evidence that his work was of a perilous nature or that he contemplated putting himself in a position of danger. We think the evidence is equally susceptible of an inference that insured, having drawn his pay, had decided to quit the job and seek some other employment. No search was made for him; no effort was made to check with his employer or the local authorities at Conowingo as to the possibility of an accidental death. There was no investigation to determine whether his belongings had been removed from the barracks where he

had been living. The evidence here adduced is, in our opinion, wholly insufficient to warrant a valid inference of death at or about the time of the insured's disappearance. While direct proof of death is not required in all cases, there should, when direct proof is not produced, at least be sufficient evidence to establish a strong probability that death did occur. Here there is neither such an unexplained change in the attitude of the insured toward his family or his friends, nor such a situation of imminent peril, nor such an elimination of other equally probable inferences, as might support an inference of death. The testimony as to the barrenness of the country around the dam, even if it should be given any weight, is too general to support a finding that the insured was placing himself, or being placed, in a situation where he would be subjected to more than ordinary risks.

For the reasons stated, the trial judge should have affirmed the company's request for a finding in its favor, or the court below should have granted its subsequent motion for judgment n. o. v.

Judgment reversed and here entered for appellant.