## Patterson's Estate

*Anderson & Anderson*, for petitioner.

WRENSHALL, P. J., hearing judge, February 1, 1946.—This matter comes before the court upon petition for hearing and for a decree of presumption of the death of James Donald Patterson, as provided by the Act of June 7, 1917, P. L. 447, as amended by the Act of April 27, 1927, P. L. 425, and as further amended by the Act of August 5, 1941, P. L. 836, 20 PS §371. The petition also asked for a rule on Charleroi Savings and Trust Company, trustee durante absentia. This court fixed a date for hearing, directed notice as required by law and issued the rule prayed for, returnable to the date fixed for hearing. Proof of service of the required notices, including the publication required by law, was presented in open court on the day appointed.

Blanche Baker Patterson, one of the respondents, filed her answer to the petition and was represented by counsel. Charleroi Savings and Trust Company, respondent to the rule, did not appear and filed no answer. The proceedings appearing to be regular in all respects and being in substantial compliance with the acts of assembly covering such cases, this court made absolute rule upon said Charleroi Savings and Trust Company erroneously, heretofore, appointed trustee durante absentia. This order declared Char-

leroi Savings and Trust Company a trustee de facto and it was directed to continue to hold the funds of James Donald Patterson subject to further order of the court.

Counsel requested an adjournment until January 10, 1946, at 10 o'clock a.m., and the request was granted. On that date testimony was taken. All known living parties in interest were present in person and were represented by counsel. From the testimony taken the hearing judge makes the following

*Findings of fact*

1. The persons interested in this proceeding are Blanche Baker Patterson, widow of J. F. Patterson, deceased, and mother of James Donald Patterson, the subject of this proceeding; Virginia Patterson Perry, daughter of J. F. Patterson, deceased, and Blanche Baker Patterson, and wife of Paul G. Perry; Frank O. Patterson, son of J. F. Patterson, deceased, and Blanche Baker Patterson and brother of Virginia Patterson Perry and James Donald Patterson, the subject of this proceeding.

2. All the parties are sui juris except James Donald Patterson, the subject of this proceeding.

3. James Donald Patterson son of J. F. Patterson and Blanche Baker Patterson, was temporarily residing with his parents in their winter home in Orlando, Florida. On the morning of April 5, 1938, James Donald Patterson went to an airport near Orlando, Florida, for the purpose of taking his second instruction flight in an airplane, and on that morning, the said James Donald Patterson, in company with his instructor, Charles D. Griffith, took off from such airport by airplane, and since that date neither James Donald Patterson nor Charles D. Griffith has been seen or heard of. An intensive search for the men and the plane was made for upwards of a month subsequent to that date, and at intervals since, but no trace of

James Donald Patterson, Charles D. Griffith, or the plane they were using, has ever been discovered.

4. James Donald Patterson has been absent from April 5, 1938, thence hitherto. James Donald Patterson has not been heard of since that date. James Donald Patterson was a permanent resident of Donora, Washington County, Pennsylvania, which borough was his legal domicile, and he has been absent from his permanent place of residence and domicile since the said April 5, 1938.

5. All the parties interested in this proceeding are citizens and residents of Washington County, Pennsylvania, and they and the subject matter of this proceeding are properly within the jurisdiction of this court.

6. James Donald Patterson died seized of valuable interests in personal property.

7. J. F. Patterson, father of James Donald Patterson, died February 22, 1942.

8. James Donald Patterson was born January 15, 1915, and therefore was aged 23 years at the time he made his second instruction flight by airplane on April 5, 1938. James Donald Patterson was unmarried on April 5, 1938, and had no issue.

9. Blanche Baker Patterson was living with her husband, J. F. Patterson, now deceased, and their said son, James Donald Patterson, on April 5, 1938, their temporary place of abode being Orlando, Florida, where the family had gone for the benefit of the said J. F. Patterson's health.

10. Blanche Baker Patterson believes that her son, James Donald Patterson, is still living and bases her belief and conclusion upon the following facts: the family had planned to return to their home in Donora, Pennsylvania, on April 6, 1938, the day following the airplane trip aforesaid; that her son, whom she called by the name of Donald, was to drive the automobile on the return trip. Donald had commenced packing sev-

eral weeks before April 5, 1938, but he discontinued packing even though the family expected to leave on April 6; that Donald's father had given him the money for the return trip to Donora several days before the date arranged for departure, yet two days before they were to leave, Donald gave her that money to keep for him; that Donald did not have the automobile serviced; that he left the keys in the family car at the airport which was contrary to his custom; that Donald was not anxious to return to Donora because it was depression time, and there was no work to be had there; that Donald felt that his father would not be able to work again; that he should be of help to his father instead of asking for money; that Donald was not anxious to return to Donora; that it was the custom at the airport for the instructor to sign out if he intended to go any place other than his regular instruction course, and that although on April 4, 1938, at the time of Donald's first instruction flight, the instructor signed out for Daytona, Florida, he did not sign out April 5, 1938, which indicated a regular flight within a radius of twenty miles of Orlando; that the weather and ceiling conditions were good on April 5, 1938, it being a warm, bright day with no wind; that Mr Griffith's plane had just come back from inspection, that Mr. Griffith was a man of extraordinary ability in handling an airplane; that Mr. Griffith had been an instructor for probably ten years and had never had an accident and was reputed to be a very safe instructor; that Donald had been disturbed and was losing sleep because he could not secure employment; that Donald had said a year or so before the last flight that South America offered opportunities although he had not mentioned that country recently; that Donald had on a tie and was dressed differently when he came down from upstairs, April 5, 1938; the weather having been very warm, ordinarily, he came down in the morning without a tie and his shirt unbuttoned; that the plane was painted a vivid orange

color which would make it readily discoverable on a search; that the Coast Guard made an intensive search within a radius of 40 miles with 40 planes taking part, flying low, but no trace of the plane or its occupants was discovered. Mrs. Patterson draws attention to the fact that most of the lakes in the vicinity are very shallow; that one can see to the bottom of most of them and the swamps are not deep and that many planes have been lost but were easily located in the swamps, and that Donald "went somewhere that we might have his life insurance and we might have his car".

11. There is no definite testimony as to the length of time James Donald Patterson was acquainted with his flight instructor, Griffith, but Mrs. Patterson thinks that they had probably been acquainted during most of the time the Patterson family was visiting in Orlando that season.

12. Under all the circumstances surrounding the disappearance of James Donald Patterson, to fly in an airplane on an instruction flight is a specific peril and such a flight brings the flyer into the range of a particular and immediate danger.

13. James Donald Patterson is presumed, in fact and in law, to be dead, intestate, unmarried and without issue.

14. James Donald Patterson is presumed, in fact and in law, to have died April 6, 1938.

### Discussion

James Donald Patterson having, indisputably, been absent and unheard of for seven years and upwards there is a legal presumption that he is dead. Such presumption is a mixed question of law and fact. Counsel are in accord on that point but there is a conflict of opinion as to the date when the death shall be presumed to have occurred. This is material because the estate will pass to different persons according to the estab-

lished date of death. Counsel seek, in this proceeding, to have a determination as to what persons will take under the will of the presumed decedent's father and what persons will take under an inter vivos insurance trust created by the presumed decedent's father. These matters cannot properly be decided at this time since this is a preliminary proceeding to establish the presumption of death.

No payments may be made from either of the funds until this proceeding is completed. The decree to be made in the present or first phase of the case is not a final decree. The court presently determines whether the presumption of death is made out and, if so the court determines the date when such presumption arose. Further proceedings must then be had under section 6(d) and 6(e) ; see 20 PS §§374 and 375.

Counsel for petitioner claims that the death of James Donald Patterson should be presumed to have occurred April 5, 1938. On that day James Donald Patterson embarked on his second airplane flight, as a student pilot, under the tutelage of Mr. Griffith, an experienced flight instructor. The plane never returned and although an intensive and thorough search was made neither the plane nor either of the occupants was found.

Counsel for the petitioner argues that the presumed decedent embarked on a perilous voyage in the airplane and the plane never having been found and its occupants never having thereafter been seen or heard of or from, that the death must be presumed to have occurred on the date of the take-off, April 5, 1938.

Counsel for petitioner relies on Fanning v. Equitable Life Assurance Society, 264 Pa. 333. In that case it appears that a great forest fire had been in progress. Fanning told witnesses he was going to fight the fire. He was never seen or heard of again. Certain persons had perished in the fire and their bodies had been burned beyond recognition. The court recognized the

doctrine of "specific peril". In Petition of Mutual Benefit Company, 174 Pa. 1, the court said that to accelerate the presumption from time, or more properly to turn it from an artificial into a natural one, it is necessary to bring the person within the range of a particular and immediate danger.

See also Herold v. Washington National Insurance Co., 128 Pa. Superior Ct. 563, and cases there cited.

Counsel for Blanche Baker Patterson, respondent, while admitting that the presumption of death is effective because of seven years' absence during which James Donald Patterson has been unheard of and from, argues that the death should be presumed as of April 5, 1945. He claims that under existing weather and flying conditions on April 5, 1938, making an airplane flight on that date, as a student pilot, was not perilous or dangerous.

Counsel notes: The fair, still, weather conditions said to exist on April 5, 1938, in the locality from which the airplane took off; that Donald had arranged to drive his mother to her home in Donora, Pa., the next day; that Donald was not anxious to return to Donora; that he was discontented; that he liked flying; that he felt that, because of his unemployment, he was a drain on his father; that he felt that he might gain employment in flying; that he had once expressed an interest in South America; that Donald had discontinued packing for the return trip to Donora; that he did not have the car serviced; that he was dressed more completely on the day in question than was usual for him when in Florida; that, contrary to his custom he left the keys in the automobile at the airport; that he had turned over to his mother the money which his father had given him for the return trip; that an unsuccessful intensive search over an area within the radius of 40 miles of the airport had been made and that an offered reward was unclaimed. Mrs. Blanche Baker Patterson, respondent, believes and says that her son James

Donald Patterson wanted his parents to have his insurance.

Counsel for respondent recognizes the doctrine of specific peril and dangerous enterprise, of which we spoke in connection with petitioner's claim but he argues that under modern conditions flying in an airplane is neither perilous nor dangerous. Counsel also draws attention to the reputation of the flight instructor, Griffith, as to care and ability as well as to his reputation for lack of mishaps. Counsel argues that the mere flying of aircraft is not a "peril" which will endanger life and that such flying does not bring the flyer or his student pilot within the range of a particular and immediate danger.

It may be worthy of note, in regard to flying aircraft or riding therein, that most insurance companies distinguish between flying in private planes and traveling in licensed planes over a scheduled route. Their actuarial statistics, no doubt, raise this distinction. Such companies' statistics evidently demonstrate that there is "peril" or "hazard" in such flights.

The cases cited for respondent are not convincing. Blanche Baker Patterson, with the undying love of a mother, refuses to be convinced that her son is dead, but the evidence she offers is meager and unsatisfactory. This evidence is not sufficient to overcome the presumption that James Donald Patterson was dead on April 6, 1945, after seven years' absence during which he was unheard of. We must, under the law, conclude that he is dead. What then happened to him? This takes us back to what he was last known to be doing—flying in an airplane as a student pilot. This was not the case of an experienced pilot alone in full charge of flying a plane. It was an instruction flight. I think that an instruction flight is more perilous than the ordinary flight of an experienced pilot. It is common knowledge that planes crash for many reasons and that such crashes frequently result in the death of the occupants.

The fair inference in this case is that the plane met with an accident and that both the occupants lost their lives therein.

The implications raised by reference to Donald's desire to have his family benefit by insurance are, unintentionally, I am sure, very detrimental to his character. There could not be a presumption or an inference that he intended to defraud an insurance company by faking or staging a death so that his family could collect insurance. It would seem far more likely, if he had insurance in mind at all, that he caused his death on the flight that they might benefit by the insurance. What of Griffith? By what means could Donald have persuaded Griffith to join in such a scheme? Love of life is certainly greater than a desire for death in all normal beings.

To assume that Donald went away, deliberately, in the airplane, along with Griffith, with the intention of not returning, would imply that he or they intended to convert the airplane to his or their own use. Such would be a criminal act and to raise such a presumption, draw such a conclusion or make such an inference would be entirely unwarranted by the evidence. There is no significance in Donald's failure to have the car serviced because, in any event, he knew that his mother intended to return to Donora in it. Leaving the keys in the car has little, if any, significance. Every one who has driven a car has done that at least once. There is no evidence to show that this was not necessary in order that the employes at the airport could move the automobile. There is no evidence that the particular plane involved was of sufficient capacity or was sufficiently fueled to travel a long distance such as to a foreign country. The disappearance of the plane and its occupants no doubt was reported nationally and although the plane was painted a bright orange, which would distinguish it, no one, apparently, ever saw it again after it took off April 5, 1938.

This court would not hold in every case that to make a flight as a student pilot is to engage in a perilous undertaking or dangerous enterprise. However, when one was participating in such a flight and the presumption of death has arisen by reason of an absence of seven years during which the absent person has never been heard of and where there is indisputable evidence that the person involved did make such a flight and was never heard of thereafter and the plane was never found it is only sound common sense to infer and conclude that death occurred on such flight. All the logic of the authorities quoted in, and the case of, *Fanning v. Equitable Life Assurance Society,* 264 Pa. 333, support this conclusion. See also *Herold v. Washington National Insurance Company,* 128 Pa. Superior Ct. 563, and the cases there cited.

### Conclusions of law

1. James Donald Patterson is presumed, in fact and in law, to be dead, intestate, unmarried and without issue.

2. The date of his death is determined to be April 6, 1938.

### Preliminary decree

And now, February 1, 1946, upon consideration of the pleadings, testimony, and arguments of counsel, the court being satisfied that the presumption of death has been made out, it is decreed that the legal presumption of the death of James Donald Patterson is made out and established as of April 6, 1938; and it is ordered that a notice requiring the presumed decedent, if alive, to produce in court satisfactory evidence of his continuance in life within 12 weeks from the date of the last publication of the notice, be published once a week for three weeks in the County Reports and in a newspaper of general circulation in the County of Washington. Exceptions sec. reg.