## Divvers's Estate.

*Marriage—Evidence—Presumption—Legitimacy—Decedent's estates.*

Where in a proceeding in the orphans' court to distribute the estate of a decedent, it appears that three children of a deceased brother claim a share in the estate, and this claim is resisted by the two sisters of the decedent, and the latter show that the deceased brother was married in 1857, lived with his wife for about one year, then separated from her and subsequently in 1861 began living with a woman who became by him the mother of the three claimants, treating and holding her out as his wife; that in 1881 the couple separated and the woman, in 1885, regularly married another man, there is no presumption that the claimants were born in lawful wedlock, and the burden is upon them to show that their father was divorced from the wife whom he married in 1857.

Argued Jan. 16, 1903. Appeal, No. 38, Jan. T., 1903, by Rose Divvers and George Lazarus, executors of Hannah J. Larraway, deceased, from decree of O. C. Luzerne County, sustaining exceptions to adjudication in estate of James Divvers, deceased. Before BEAVER, SMITH, W. W. PORTER, W. D. PORTER and MORRISON, JJ. Reversed.

Exceptions to adjudication.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in sustaining exceptions to adjudication.

*George R. Bedford*, with him *Paul Bedford* and *John T. Lenahan*, for appellants, cited: Reading Fire Ins. & Trust Co.'s Appeal, 113 Pa. 204; Senser v. Bower, 1 P. & W. 450.

*Ralph H. Wadhams*, with him *George K. Powell*, for appellees, cited: Dennison v. Page, 29 Pa. 420; Tioga County v. So. Creek Twp., 75 Pa. 436; Freno v. Freno, 1. W. N. C. 165; King v. Inhabitants of Twyning, 2 B. & Ald. 387; Greensborough v. Underhill Town, 12 Vt. 604; Simpson's Est., 4 Delaware County Rep. 129; Eddy's Est., 8 Pa. Dist. Rep. 701; Senser v. Bower, 1 P. & W. 450; Wile's Estate, 6 Pa. Superior Ct. 435; Boulden v. McIntyre, 119 Indiana, 574 (21 N. E. Rep. 445); Johnson v. Johnson, 114 Ill. 611 (3 N. E. Rep. 232); Blanchard v. Lambert, 43 Iowa, 228; Orthwein v. Thomas, 127 Ill. 554 (21 N. E. Rep. 430); Moore v. Miller, 147 Pa. 378.

OPINION BY MORRISON, J., March 12, 1903:

A careful examination of the evidence leads us to the conclusion that the learned auditing judge was fully warranted in finding, in substance, the following facts:

That James Divvers died March 18, 1900, intestate, unmarried and without issue. He left to survive him two sisters, Hannah J. Laraway and Rose Divvers. John Divvers, a brother, had died a year earlier, to wit: in March, 1899. From about the year 1855 to the year 1860, John Divvers resided in the county of Columbia, and was there married in 1857 to one Elizabeth Frederick, with whom he lived about one year, when they separated, she going to the city of Baltimore, Maryland, where she continued to live until her death in 1888. Sometime after 1860 John Divvers returned to Luzerne county where he continued to reside until his death in March, 1899. In or about the year 1861 (the exact date is not certain) John Divvers began living with one Sarah Strickland, treating and holding her out as his wife, and had by her three children, viz: Mary, Harry and Jessie. John Divvers and Sarah Strickland continued to live together until the year 1881, when they separated, and in 1885 following, she regularly married one Frank Kniffen, with whom she lived until his death in the year 1899.

At the audit, which was closed May 11, 1901, the fund raised out of the estate of James Divvers, deceased, was claimed by the two sisters, Hannah J. Laraway and Rose Divvers. But their right to the whole of the estate was disputed by Mary J. Sanders, Harry W. Divvers and Jessie Divvers Frantz, the children of John Divvers, deceased, they claiming to be the lawful children of John Divvers and entitled to the share in the estate of James Divvers, deceased, which would have gone to their father, John Divvers, if he had survived his brother James. This claim of the children of John Divvers was resisted on the part of decedent's sisters, Rose Divvers and Hannah J. Laraway, on the ground that they were not legitimate children of John Divvers, but that they were the illegitimate children of John Divvers and Sarah Strickland, for the reason as alleged that their parents were never married. It must be conceded that they could not inherit from the estate of James Divvers, as against his sisters, unless they were the legitimate children of John Divvers, the brother of James.

Judge DARTE, then of the orphans' court of Luzerne county, since deceased, held in substance that these children of John Divvers were illegitimate and could not inherit from James Divvers, and awarded the whole of the estate to the sisters of James. Exceptions were filed to the findings of fact and conclusions of law by Judge DARTE and his successor, Judge TROUTMAN, on November 16, 1901, in an opinion filed, reversed some of Judge DARTE's findings of fact and conclusions of law, and held that the said children of John Divvers were legitimate and awarded to them one third of the estate of James Divvers, deceased. Judge TROUTMAN's findings of fact and conclusions of law were excepted to by the appellants, and hence we have this appeal. Judge TROUTMAN made a labored effort to establish the fact from the evidence that John Divvers and his wife, Elizabeth Frederick, separated about seven years before he began to live with Sarah Strickland, the mother of these children. The auditing judge, DARTE, who had the witnesses before him, found as a fact that this lapse of time did not exceed five years and probably not more than two years. An examination of the testimony leads us to the conclusion that Judge DARTE's finding upon this question was substantially correct, and the case ought to be decided upon that theory. We then have John Divvers

lawfully married to Elizabeth Frederick in 1856 or 1857, and they living together as man and wife for one year and then separating, and he entering into the relation with Sarah Strickland, which continued apparently as man and wife until 1881, when they separated and she married Frank Kniffen, with whom she lived until 1899.

We are of the opinion that when the appellants conclusively proved the marriage of John Divvers with Elizabeth Frederick in 1856 or 1857, and that probably as early as 1861 he began to live with Sarah Strickland, the mother of these children, something more was required than legal presumptions to establish the fact that John Divvers had been freed from his marital contract with Elizabeth Frederick, so that he could contract a new marriage with Sarah Strickland. Upon the facts in this case we cannot agree with Judge TROUTMAN that the burden was upon the sisters of James Divvers to prove that John Divvers and Sarah were not divorced. We think the facts proved and found fully warranted Judge DARTE in the conclusion that the relation between John Divvers and Sarah Strickland thus begun and continued was meretricious. If we are right in this conclusion, then there is nothing in the record to show that such relation changed at any time thereafter. It must be conceded that in the absence of evidence showing a lawful marriage a meretricious connection once begun is presumed to continue. We think the fact of a lawful marriage between John Divvers and Elizabeth Frederick, and the fact that she lived until 1899, and the further fact that in 1881 John Divvers and Sarah Strickland separated, and in 1885 she contracted a marriage, regularly, with one Frank Kniffen, with whom she lived until his death in 1899, rebuts any presumption which might arise under other circumstances that the relation between John Divvers and Sarah Strickland was that of husband and wife. In our opinion the burden rested on the children of John Divvers, as was held by Judge DARTE, to prove that they were the legitimate children of John Divvers. They did not do this, and Judge TROUTMAN helped them out by casting the burden upon the sisters of James Divvers of proving that John Divvers and Elizabeth Frederick were not divorced. We think in this case both justice and the rules of law require that where the

legitimacy of these children depended upon a divorce separating John Divvers and Elizabeth Frederick, granted between 1857 and 1861 or 1862, that the persons alleging such divorce should furnish evidence of it. Surely the separation between John Divvers and Elizabeth Frederick was not of sufficient· duration in time to warrant any presumption of·either death or divorce. And if a presumption of death would have arisen it was fully rebutted by proving that Elizabeth Frederick lived until 1899. If John Divvers and Elizabeth Frederick were divorced between 1857 and 1861 or 1862, and we try to presume that John Divvers and Sarah Strickland were afterwards married, and that these children were legitimate, then how is the fact to be explained that Divvers and Sarah separated in 1881, and that she entered into a marriage contract with Frank Kniffen? In order to reconcile this, I suppose we are expected to presume another divorce. But there is nothing to raise this presumption except the idea that Sarah must be presumed not to have committed, in 1885, the crimes of adultery and bigamy. But why is it not consistent to hold that her relation with John Divvers was not that of a lawful wife; that she knew she was living with him as his mistress? This will explain her leaving him and entering into a marriage contract with Kniffen.

The learned court below cites Senser v. Bower, 1 P. & W. 450. This was a case in which the illegitimacy of a claimant was raised, and GIBSON, C. J., on page 452, said: " For civil purposes, reputation and cohabitation are sufficient evidence of marriage; ·and there is evidently enough in the case to show that the plaintiff's father and mother were married in fact. But there is said to be the same evidence of a precedent marriage of the mother with another man, who was alive at her second marriage; and hence a supposed dilemma. But the proof being equal, the presumption is in favor of innocence; and ·so far is this carried in the case of conflicting presumptions, that the one in favor of innocence shall prevail." This case goes to the extent only of holding that where the proof is equal the presumption is in favor of innocence. But we have endeavored to show that in the case under consideration the proof is not equal. Our case differs from Senser v. Bower and wife in that John Divvers and Elizabeth Frederick were proved

and conceded to have been married in 1857. Therefore, in the absence of any other proof, only that he and Elizabeth had separated for four or five years, we hold that the presumption that the beginning of the relation between John Divvers and Sarah Strickland was meretricious is too strong to be overthrown by the presumption of innocence. Then again, this theory is strongly supported by the fact that Sarah and John separated and that she contracted a marriage in 1885 with Kniffen. The doctrine that the presumption of innocence is a strong one in the law is beyond dispute. In support of this doctrine 19 Am. & Eng. Ency. of Law, p. 38, etc., is cited. "If presumptions are logical inferences they are presumptions of fact; if legal assumptions they are presumptions of law." On page 40 of this work it is said: "Presumptions cannot contradict facts nor overcome facts that have been proved, but if the evidence on both sides be equal, then the presumption should prevail. Presumptions cannot act in futuro, nor be retroactive, and a presumption may be rebutted by a stronger presumption."

We cannot concede where a man is proved to have married a woman and within four or five years, while she is in full life, he is found living with another woman and holding her out as his wife, that, without more, the presumption of innocence overcomes the proof that he was the husband of another woman, and therefore could be lawfully married to the second one. In short, we do not consider this a case of equal presumptions. The learned court below seemed to rely on Breiden v. Paff, 12 S. & R. p. 430. In our opinion this case does not sustain the conclusion of the learned judge. GIBSON, Judge, said: "John Paff, the plaintiff, claimed under a conveyance from George Paff and Catherine, his wife, of one third of the premises, as the patrimonial estate of the wife. It was proved that she had been married to one Lesher, who was then dead more than thirty years; and one of the witnesses added that she had three husbands before she married Paff. With the exception of Lesher, there was no evidence to show who these three husbands were, or any circumstances respecting them. On this, it was contended, that to establish the validity of the conveyance, it was necessary to show that all these three husbands were dead at the time of executing it, because she must

otherwise be considered not as the lawful wife of Paff, but of some previous husband; and consequently, that a conveyance to which her legitimate husband was not a party, would be insufficient to pass her estate. I am of opinion the court was right in leaving the jury to presume that the persons to whom she had been married, previous to her marriage with Paff, were dead. In an old transaction like this, the fact of a second marriage is of itself some evidence of the death of the former husband. There are sometimes cases where it is unavoidably necessary to decide on the existence of facts without a particle of evidence on either side, and if a decision in a particular way would implicate a party to the transaction in the commission of a crime, or any offense against good morals, it ought to be avoided."

This case is easily distinguishable from the one under consideration. Mrs. Paff had been married to Lesher who was then dead more than thirty years, and there really was no evidence of her marriage to anyone else except John Paff. It is true that there was a loose declaration of one of the witnesses that she had three husbands before she married Paff. But how far this falls short of the evidence in the Divvers case? John Divvers's sisters proved that he was married in 1856 or 1857 to Elizabeth Frederick, and that she was in full life until long after all these children, claimants, were born of Sarah Strickland. Now, couple with this the proved and conceded fact that in 1881 John Divvers and Sarah Strickland separated, and in 1885 she contracted a marriage with Kniffen, and it is absurd to say that there was no evidence but presumption against presumption. We hold that this state of proof clearly cast the burden on those who asserted that the three children of John Divvers were legitimate to at least prove that he was divorced from Elizabeth, his lawful wife. If this had been proved it is possible that they could have stopped without showing an actual marriage between John and Sarah. The presumptions might have justified finding that there was such a marriage.

We have examined with some care the opinion of this court by President Judge Rice in Wile's Estate, 6 Pa. Superior Ct. 435. This case is relied upon by the appellees. It must be accepted as good law upon its facts, but we do not think its doc-

trine will sustain the court below in the case under considera-
tion.   In this opinion Judge RICE says : " When the existence
of a valid marriage relation is once established by proof it is
to be presumed, ordinarily, that it continues to exist until the
contrary is shown or until a different presumption is raised.
Where this presumption comes in conflict with the presumption
of the innocence of either of the parties in marrying a second
time and of the legitimacy of the offspring of such marriage,
the question arises which shall yield?   If one of the parties
has been absent from his or her domicil, unheard of for seven
years, there is no difficulty.   In such a case death is to be
presumed : Francis v. Francis, 180 Pa. 644 ; but this presump-
tion is subject to be rebutted, as it was in the present case, by
proof that he was alive at the time of the second marriage :
Thomas v. Thomas, 124 Pa. 646.   But proof that he was alive
is not positive proof that he was still the lawful husband of
the woman to whom he was first married.   That fact rests
alone on the presumption of the continuance of a relation which
might have been dissolved by divorce as well as by death.
Upon that bare presumption the appellants' whole case rests.
In other words, they say that Benjamin Andrews was married
to Elizabeth in 1866, and was alive when she married John
Shetzline in 1884; therefore, because of the presumed con-
tinuance of a proved relation, the latter marriage was void, the
child born of it was a bastard, and was incapable of inheriting
from or through his father.   Possibly, if there were nothing
further in the case, this presumption would neutralize the
prima facie presumption in favor of the validity of the mar-
riage directly in issue, although that has been denied in more
than one case."   In another part of the opinion Judge RICE
clearly states the ground on which his opinion rests, thus :
" The declaration of Benjamin Andrews that the mother of
the appellee was not his wife ; his marriage to another woman
with whom he lived openly as his wife and who was so recog-
nized by his daughter ; the terms of intimacy and friendship
which existed between the mother of the appellee and her
second husband's family during all the period of their mar-
riage ; their recognition of her as his lawful wife, and of the
appellee as his legitimate child, emphasized by a solemn prom-
ise made by one of the appellants to the father upon his death-

bed; the lapse of time during all which no question appears to have been raised by anyone as to the validity of either. of the second marriages, are facts which cannot be overlooked in determining such an issue as is presented here. They do not of themselves prove the dissolution of the first marriage, it is true, but they do show a probability of it, which, taken in connection with the presumption of innocence and legitimacy neutralized the presumption that Benjamin Andrews was the lawful husband of Elizabeth at the time of her marriage with John Shetzline, and left the fact essential to the appellant's claim not proven."

.. In this case it clearly appears that in 1866 the mother of the boy whose legitimacy was in question was married to a man who deserted her in 1872, after having treated her with great brutality, and after repeatedly declaring that she was not his wife. She did not marry until in 1884, about twelve years after her desertion. He was not dead as she supposed when she remarried. But it was shown that two or three years after his desertion the supposed first husband married another woman, with whom, as his wife, he has ever since lived and cohabited. Here we have the long absence of the first husband, we have his declarations that the mother of the boy by the second husband was never his wife, we have the fact that he married another woman soon after leaving the mother of the boy and that he continued to live with that woman. Now really what Wile's Appeal determines is that the facts in that case and the legal presumptions rebutted the idea that Elizabeth was the wife of Benjamin Andrews at the time of her marriage with John Shetzline, the father of the boy who was claiming the right to inherit from his grandfather's estate.

What we decide in the case under consideration is that its facts and the proper legal presumptions fail to bring it within the rule, in Wile's Estate.

Some attention has been given to the fact that while John Divvers and Sarah Strickland lived together they joined in the execution of a deed which recited that they were husband and wife. It appears that this was a quitclaim deed and we do not attach much importance to it. Hannah J. Laraway and Rose Divvers may have believed on January 7, 1864, that John and Sarah were married, and yet it may not have been so. Again they may have

been willing to accept a quitclaim deed from John and Sarah knowing that she was not his wife. The learned court below did not attach much importance to this deed.

We deem it unnecessary to notice the assignments of error in detail, but in so far as they allege error in the court below in over-ruling the auditing judge, and in awarding distribution of any part of the fund raised from the estate of James Divvers, deceased, to Harry W. Divvers, Mary J. Sanders and Jessie Divvers Frantz, they are sustained, and the decree of the court reversed at the costs of the appellees. And it is now ordered and decreed that the fund be awarded and paid over to the appellants.