Baumeister, Appellant, *v.* Baugh & Sons
Company et al.

Argued October 2, 1940.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES
and HIRT, JJ.

*Henry Thomas Dolan,* with him *Robert C. Duffy,* for appellant.

*George H. Detweiler, Robert A. Detweiler, Sylvia E. Detweiler* and *Charles W. Sweeney,* for appellees.

OPINION BY KELLER, P. J., November 22, 1940:

The claimant's husband, Charles Baumeister, 21 years old, was employed by Baugh & Sons Company as a machinist apprentice. The main business of his employer was the manufacture of fertilizers; as by-products it manufactured glue, bone-black, and certain animal feeds. It has been in that business for very many years. In the manufacture of feeds, as distinguished from fertilizers, it uses carcasses of herbivorous animals, *but no animal droppings.* The Philadelphia plant is a large one and includes fifty-two buildings erected on eighteen acres of land. The carcasses of dead animals are handled and processed in only two buildings, Nos. 1 and 35.

On July 7, 1937, while at work in the pump room, a building separate and apart from Nos. 1 and 35, and his duties having nothing to do with the handling of the carcasses or their products, Baumeister sustained a laceration of the middle phalanx of the index finger of his left hand, as a result of its being caught and pinched between a pair of flanges. He immediately reported the accident to the plant physician, Dr. William C. Wilson, who gave him a tetanus anti-toxin injection—1500 units —and dressed the wound. No sutures were taken because, as he testified, "it was not deep enough and it was not bleeding. That is, there was no hemorrhage and the wound was left open." The wound was dressed and bandaged nine times, until July 19, at which time the finger had fully healed "uneventfully" and without com-

plications. He was not totally disabled because of the finger at any time after the date of injury.

On August 20 he entered Lankenau Hospital where he was found to have acute appendicitis. He was operated on the next day, when the appendix, which was found to be gangrened and perforated, was removed. Broncho-pneumonia set in and on September 11 symptoms of tetanus appeared. He died on September 14, 1937 of broncho-penumonia, as a direct result of the effects of the tetanus. Both Dr. Pfeiffer, the surgeon who performed the operation, and Dr. Deaver, who assisted at the operation, testified positively that it was their professional opinion that it was a case of surgical or postoperative tetanus, and resulted from the operation, and that the injury to his finger on July 7, over two months before, had nothing to do with it.

Testimony was given on behalf of the claimant by Dr. Keegan, who never saw or treated the employee during his lifetime, and Dr. Kahn, a general practitioner, who saw him while he was in the Lankenau Hospital for treatment,—although it does not appear from his testimony that he observed or examined the lacerated finger —and they gave it as their opinion that the tetanus infection was received when the finger was lacerated. The referee found this as a fact, and awarded compensation. The defendant appealed to the board, which set aside the fifth, twelfth, fourteenth, fifteenth, sixteenth and seventeenth findings of fact of the referee and the referee's conclusion of law, and in place thereof substituted the following:

"FINDINGS OF FACT

"5. That as a result of the alleged accident, decedent sustained a laceration of the index finger of his left hand.

"12. That tetanus poison commonly originates in the intestinal tracts of herbivorous animals, but that the decedent herein was not exposed to contact with the carcasses of such animals during the course of his employment in the defendant's plant.

"14. That the tetanus poisoning which resulted in the decedent's death on September 14, 1937 was the result of a post-operative infection developing during his hospitalization at the Lankenau Hospital subsequent to the removal of his appendix.

"15. That the machine upon which the decedent was working at the time of the alleged accident had been cleaned previous to its use; was not situated in a portion of the plant in which the bodies of the animals were kept, and was not infected with tetanus bacilli.

"16. That while the operation for appendicitis was conducted under most sterile conditions, the possibility of tetanus infection was not thereby completely eliminated.

"17. That the decedent's death on September 14, 1937 was not the direct or indirect result of the alleged injury he sustained on July 7, 1937."

"CONCLUSION OF LAW

"Under the facts above recited, we conclude as a matter of law that the decedent met his death on September 14, 1937, as a result of tetanus infection which developed following the removal of his appendix which was in a gangrenous condition, and that this infection had no causal connection with the alleged accident of July 7, 1937."

It accordingly set aside the award and entered the following order:

"The claimant herein having failed to establish a causal connection between the alleged accident of July 7, 1937 and the death of Charles Baumeister, the decedent, on September 14, 1937, the claim for compensation in this case is dismissed."

On appeal by the claimant to the court of common pleas the order of the board was sustained, the appeal was dismissed and judgment was entered for the defendant. The claimant appealed to this Court.

The board is the ultimate fact-finding body. Referees

are only agents or representatives of the board. It may set aside their findings if it disagrees with the inferences to be drawn from the testimony or differs as to the weight to be given the evidence. The findings of fact of the board on the testimony, whether taken before a referee, or before the board itself, are conclusive on the courts, if there is sufficient or substantial competent evidence to sustain them: *Hoosca v. Lytle Coal Co.*, 129 Pa. Superior Ct. 434, 436, 196 A. 892.

In the present case there was amply sufficient, substantial, competent testimony to sustain the board's findings, conclusion of law, and order. The board, in its opinion, showed a comprehensive grasp and understanding of the evidence and gave its reasons, which were substantial and apparently well-founded, for accepting the professional opinions or conclusions of Drs. White, Pfeiffer and Deaver rather than those of Drs. Keegan and Kahn.

Both Dr. Deaver and Dr. Pfeiffer testified that tetanus germs are sometimes present in the intestinal tract of human beings, who have no history of having had any wound, and do no apparent injury unless or until an open wound in the tract furnishes an entrance into the tissue. Dr. Deaver testified (Rec. pp. 35, 36) : "I feel that the tetanus germ probably being present in the intestinal tract, after the appendix was removed and the drains were put in, his wound became infected, that portion of his wound that [was] not closed, which would predispose to the growth of the tetanus organism if present. Q. Doctor, the presence of tetanus germs in the intestinal tract, is that a frequent or infrequent condition? A. I know they are present. Exactly the instance of it I can't say." Dr. Pfeiffer testified on the subject (Rec. pp. 82, 83) as follows: "The other possibility lay in the infected wound itself. Of course, we were dealing with an infected wound. Such wounds as a rule, do not get tetanus although we know of many instances that tetanus organisms are present in the in-

testinal tract—somewhere around fifteen to thirty per cent, but under these conditions they rarely produce clinical tetanus. Even though present they do not get into the tissue. Nevertheless, that possibility had to be admitted, that the man had infected himself from his own intestinal tract."

(1) Appellant's counsel argues that the board was required to disregard or discredit the testimony of these surgeons because there was no testimony in the record that the decedent "was one of the fifteen to thirty per cent of patients said to exhibit the presence of this organism within their own intestinal tracts." But the process of reasoning by which these surgeons arrived at their professional opinion that the tetanus infection entered the tissue through the infected wound at the appendix does not contain as many or as violent assumptions as must have been made by claimant's doctors in arriving at their opinion that the tetanus germ entered the system of the decedent through the lacerated finger. To arrive at that conclusion they had to assume (1) that a carcass in defendant's plant was infected, of which there was no proof; (2) that at or following Baumeister's injury the bacilli from this infected carcass entered his tissue through the lacerated finger, of which there is not only no proof, but the undisputed testimony was that he did not handle any carcasses and that his work was not in or about the two buildings where these carcasses were handled and processed; and (3) that the lacerated finger became thus infected, of which there is not only no proof, but the undisputed evidence is that the finger healed without infection.

Appellant's contention was well answered by President Judge Bok in his opinion, as follows: "The Board had the right to choose between these medical opinions and we may not upset its findings, since the evidence supports them. We are not impressed by claimant's efforts to disparage the testimony of Dr. Deaver and Dr. Pfeiffer, who are not only eminent surgeons but who

also gave the case close study. The rarity of the case is no more or less impressive than the fact, amply shown by the defense, that there has never been a case of tetanus in the plant within the knowledge of the witnesses. Had the disease been one that was not only rare but unknown, or had the doctors been baffled by it or uncertain in their diagnosis, a different situation would be presented. All that we expect of our experts is a clear-cut opinion based upon their best judgment. They need not prove every step between hypothesis and conclusion. Much of nature is still beyond our reach, as any honest doctor will admit, and it has been explained in this record how the tetanus bacillus could grow in small crevices shut off from the air even in an open wound. The validity of their testimony as experts is not impeached by their not having examined each crevice and found the bacillus. The science of symptomatology is sufficiently far advanced to determine accurately an unseen cause from a seen effect. We know in this case that the appendix was contaminated and perforated, that a certain percentage of people carry the tetanus bacillus in the intestinal tract, and that every one is constantly exposed to it."

(2) Claimant also contends that the board erred in considering certain evidence referred to by Judge Bok in the extract above cited from his opinion.

The claimant introduced evidence that the tetanus bacillus is most commonly found in the intestinal tract of herbivorous animals, and in the ground containing the excreta of such animals; and from this, in conjunction with evidence that some carcasses of herbivorous animals were received at the plant daily, urged upon the board the adoption of the inference that the tetanus germs which caused Baumeister's death came from such carcasses and were received into his body through the lacerated finger; thus assuming, without proof, that the carcasses received at the plant had such bacilli and that Baumeister came into contact with them, and the lacerated finger became infected thereby. To rebut

these inferences, the defendant produced evidence, (1) that Baumeister's work and duties did not place him in contact with or even in the neighborhood of these carcasses; (2) that great care had been taken in processing the carcasses to destroy such germs, if any there were present, and to clean the machinery used in the plant and worked on by Baumeister; and (3), as showing the success of such precautions, that in the twenty-eight years in which the witnesses had had charge of or had worked in the plant, no case of tetanus infection had occurred there; of which last the claimant complains.

In view of the inferences which the claimant sought to have the board draw from matters largely assumed rather than proved, we are of opinion that the evidence complained of had probative force to rebut the inferences thus attempted to be drawn by the claimant, and was admissible. It might be different if the claimant had proved, rather than assumed, the matters above referred to as necessary to support the inference which she urged the board to adopt; and the decisions relied on by appellant would then be applicable. *The commission of an act* charged cannot be proved by showing the commission of a like act at a different time by the same person—except where knowledge or intent is a material fact to be proved [1]; nor can it be disproved by showing a general course of conduct otherwise.[2] But while, ordinarily, a proved fact may not be rebutted by a probability, the principle has no application in a case

---

[1] *Keiter v. Miller*, 111 Pa. Superior Ct. 594, 596, 170 A. 364; *Jamestown Iron & Metal Co. v. Knofsky*, 302 Pa. 483, 486, 154 A. 15; *Klein v. Weissberg*, 114 Pa. Superior Ct. 569, 574, 174 A. 636; *Veit v. Class & Nachod Brewing Co.*, 216 Pa. 29, 33, 64 A. 871.

[2] *Mann v. Weiand*, 81* Pa. 243, 255; *Hays v. Millar*, 77 Pa. 238.

where, like this one, medical opinion must rest, to some degree, on a choice between probabilities.

The appeal is dismissed and the judgment of the court below is affirmed.