Hudek *v.* United Engineering and Foundry Company et al., Appellants.

Argued May 6, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Murray J. Jordan,* with him *Fred J. Jordan,* for appellants, employer and insurance carrier.

*Harold R. Bair,* with him *E. E. Allshouse,* for appellant, guardian of minor son of decedent.

*Marquis M. Smith,* for appellee, alleged widow, claimant for herself and step-children of decedent.

OPINION BY KELLER, P. J., July 16, 1943:

Martin Hudek was accidentally killed on February 7, 1936, while in the course of his employment with United Engineering and Foundry Company. Claims for compensation were filed (1) by his minor son, Adam Hudek (born December 24, 1922, Vandergrift Savings & Trust Company, guardian); and (2) by Anna Hudek, on her own behalf as widow and for her two minor children, as stepchildren of the deceased employee.

Disregarding the immaterial intermediate proceedings, the referee—whose prior findings of fact, conclusions of law and award dated September 12, 1940 had, on December 18, 1940, been reversed and set aside by

the board—on July 3, 1941 filed findings of fact, con-
clusions of law and order disallowing compensation to
Anna Hudek, for herself and her two minor children,
on the ground that she was not the lawful wedded wife
of Martin Hudek at the time of his death or at any
other time; that in consequence her two minor chil-
dren, Anthony J. Zupanovich and William H. Zupano-
vich, by her first husband, Joe Zupanovich, were not
Martin Hudek's stepchildren, and that he did not
stand *in loco parentis* to them, because they were not
members of his household at the time of his death but
were living with their mother in Denver, Colorado.
He awarded $1,118.57 compensation to Adam Hudek,
as decedent's only minor child.

On appeal by Anna Hudek to the board, the referee's
findings of fact, conclusions of law and award to Adam
Hudek, and disallowance of compensation to Anna
Hudek and her children were affirmed; but the board
stated in its opinion that it had not considered certain
documentary evidence relied on in part by the referee
in arriving at his decision.

Anna Hudek appealed from the board's order to the
court of common pleas, which on December 23, 1942
sustained the appeal, reversed the order of the Work-
men's Compensation Board and reinstated the referee's
award of September 12, 1940, and entered judgment on
said award in the amount of $4,022.93, as follows:

To the guardian of Adam Hudek, minor
child ............................... $261.66
To the administrator of Martin Hudek, fun-
eral expenses ....................... 150.00
To Anna Hudek for herself as widow and for
her children, as stepchildren of decedent 3,611.27

$4,022.93

The defendant and Adam Hudek's guardian sepa-
rately appealed.

The judgment must be reversed.

First. The court below had no power to set aside the findings of fact of the board and reinstate the prior findings and award of a referee which had been reversed and set aside by the board.

We have repeatedly said that the referee is only the agent or representative of the board: *Morgan v. Sanderson*, 146 Pa. Superior Ct. 37, 39, 21 A. 2d 475; *Baumeister v. Baugh & Sons Co.*, 142 Pa. Superior Ct. 346, 349-350, 16 A. 2d 424. The board may disregard his findings and substitute its own. When the board reverses or sets aside a finding of fact of a referee, that finding is thereafter of no force and effect whatever. It has no more bearing in the subsequent proceedings than the verdict of a jury which is set aside by the court and a new trial ordered, resulting in a different verdict. The court has no power to make its own findings contrary to the findings of the board: *Icenhour v. Freedom Oil Works*, 145 Pa. Superior Ct. 168, 20 A. 2d 817. Still less has it any power to resurrect findings of a referee, which the board had reversed and set aside, and reinstate them in place of the findings of the board. Such a course is wholly beyond its authority.

Secondly, the court below misunderstood the function of the board, and its own authority to interfere with the board's action.

Where the board sustains a claim for compensation and makes an award, the authority of the court is limited to a determination whether there is substantial competent evidence to sustain the award.

But when the board rejects the claim, either because it feels that the claimant has not sustained the burden of proof, or because it does not believe the testimony, or material parts of it, in support of the claim, it is not the province of the court to weigh the testimony and decide whether it would have made the same de-

cision. It can set aside the findings of the board *refusing* compensation only if they are inconsistent with each other, or with its conclusions of law and its order, or if they cannot be sustained without a capricious disregard of the competent evidence: *Walsh v. Penn Anthracite Mining Co.,* 147 Pa. Superior Ct. 328, 333, 24 A. 2d 51. The board is not bound to believe testimony even if it is not contradicted: *Bakaisa v. P. & W. Va. R. R.,* 149 Pa. Superior Ct. 203, 210, 27 A. 2d 769; *District of Columbia's Appeal,* 343 Pa. 65, 79, 21 A. 2d 883, 890.

The right of Anna Hudek to compensation as widow of Martin Hudek rested on her proving to the satisfaction of the board, that she was his lawful wedded wife. It is not disputed that they obtained from the Clerk of the Orphan's Court of Westmoreland County a marriage license on July 17, 1935, and returned the certificate of marriage attached thereto, stating therein "that on the 20th of July 1935, we united ourselves in marriage at Greensburg, Pa." The question before the board was whether she was legally competent on July 20, 1935 to marry him. If she was not, she did not become his lawful wife. She was first married to Joe Zupanovich in Austria (later Yugoslavia) sometime before 1912. He came to America in 1912 and she followed in 1921. She had by him the two children beforementioned, born April 1, 1922 and March 31, 1924, respectively. Joe Zupanovich died in 1925. In 1928 she married Tony Bogden. He left this country in 1930 to go back to Yugoslavia. He had received from an insurance company, on June 12, 1930, $4,000 under a group insurance policy issued to employees of the defendant company covering disability insurance. Of this amount $1,000 was paid to his wife, $614 was paid to his creditors, on his orders, and $2,386 he took with him. She never communicated with him thereafter. She did not obtain a divorce. She said she had been

told by a friend that he was dead; but she took no steps to verify it. When she first applied, in 1930, to a justice of the peace—who knew her and of her marriage to Bogden—for a marriage license so that she could marry Hudek, she replied, in answer to his question, that she did not know whether Bogden was living or dead, and refused to make affidavit that he was dead. The justice refused to issue the license. When after her marriage to Hudek she applied to a priest to marry them with a religious ceremony, he asked her "whether she was free to marry, and at that time she said she did not know whether her second husband was really dead or not, but she thought he was dead" (55a-56a). She did nothing to procure the certificate of his death which the priest said he would require before he would perform the ceremony. Bogden had been absent only five years, so the presumption of death resulting from seven years' unexplained absence had not arisen: *Ryan v. Prudential Ins. Co.*, 135 Pa. Superior Ct. 166, 169, 4 A. 2d 812. Furthermore she knew where he had gone —they were all Croats—and she knew he had gone back home, and yet she made no inquiry there. See *Wolff's Est.*, 12 W. N. C. 535, 536; *Grunda v. First Lithuanian B. & L. Assn.*, 128 Pa. Superior Ct. 604, 607-8, 194 A. 747; *Volmer v. John Hancock Mut. Life Ins. Co.*, 101 Pa. Superior Ct. 117, 124. It is true that *after* the presumption of death has arisen from *seven years* unexplained absence, in cases where legitimacy of children is involved, there is no presumption as to the time when, during those seven years, the death of the absent party actually occurred (*McCausland's Est.*, 213 Pa. 189, 194, 62 A. 780), but here only five years had elapsed when Mrs. Bogden married Hudek, and the presumption of Bogden's death had not yet arisen; and the legitimacy of children is not involved.

In her application for a marriage license Mrs. Bogden did not specifically state that her second husband,

Bogden, was dead. She did not state that she had been *twice* married. The application, in these respects, read:

"Has applicant been married before? ...... [Not answered]

"If so, how was former marriage or marriages dissolved?

*By death.*"

Joe Zupanovich was dead, but the testimony was that Mrs. Bogden had no accurate knowledge whether Tony Bogden was dead or not. She made no inquiry on the subject.

The documentary proof referred to by Referee Foust in his second opinion consisted of a letter signed by Tony Bogden, which was received June 8, 1937; affidavit of Tony Bogden, dated March 3, 1938, certified under the seal of the Court of Appeal at Split, Yugoslavia, which was certified to be genuine by the Vice Consul of the United States at Zagreb, Yugoslavia, on March 26, 1938, which was accompanied by the photograph of Tony Bogden, definitely recognized as claimant's husband, which set forth details as to where he had lived—No. 21 Perry Avenue, Vandergrift, Pa.; his employment by United Engineering & Foundry Company there from June 4, 1928 to August 29, 1929, and the details of his receipt of disability insurance, $4000, and its disposition, and his marriage to Anna Bogden on August 27, 1928; that he had never applied for nor was granted a divorce from her; that after receiving $2400 of insurance money he left the United States and came to Primosten, Township of Sibenik, Yugoslavia, where he was then residing.

The Letters Rogatory, issued to get this information in evidential form, were returned unexecuted, with the notation, attested "For the Governor, Counselor Jovo N. Marcetic," that "Anton Bogden, ...... from Primosten, died in Primosten on the 12th day of January, 1940, where he was buried."

The board in its opinion stated with reference to the foregoing papers:

"In arriving at our ultimate conclusion by which we affirm the decision of the Referee we have not been influenced by nor considered the ex parte documentary proof offered by the defendant. We do not consider it necessary to pass on the question of its admissibility because we are of the opinion that the claimant, Anna Hudek, has failed to prove that she is the lawful widow of Martin Hudek. The validity of her marriage to Martin Hudek has not been established because she has failed to prove by competent legal evidence that Tony Bogden was dead at the time she married Martin Hudek. Since we believe this marriage to be invalid, her two children by a prior marriage cannot be considered the stepchildren of Martin Hudek, deceased."

Its action was based on her failure to sustain the burden of proof resting on her to prove her case to its satisfaction.

We have pointed out a number of times and as recently as *Sharpe v. Federal Cleaning Co.*, 144 Pa. Superior Ct. 231, 238, 240, 19 A. 2d 509, and *Madison v. Lewis*, 151 Pa. Superior Ct. 138, 143-144, 30 A. 2d 357, that in *Wile's Estate*, 6 Pa. Superior Ct. 435,— relied on by appellee to support her position that the presumption of the continuance of her marriage relation with Tony Bogden was overcome by the presumption of her innocence in her marriage with Martin Hudek—the presumption of innocence in that case was supported by many facts in evidence which were very persuasive, and without which the decree would not have been entered; that without those accompanying and additional facts, the presumption of innocence would not have prevailed. We said in *Divver's Est.*, 22 Pa. Superior Ct. 436, 439, 444, "Something more was required than legal presumptions to establish the fact that John Divvers had been freed from his marital con-

tract with Elizabeth Frederick so that he could contract a new marriage with Sarah Strickland ...... Now really what Wile's Appeal determines is *that the facts in that case and the legal presumptions* rebutted the idea that Elizabeth was the wife of Benjamin Andrews at the time of her marriage with John Shetzline, the father of the boy who was claiming the right to inherit from his grandfather's estate."

We are of opinion that the question was one of fact for the board and that its finding that claimant had not met the burden of showing the validity of her marriage to Martin Hudek, because she had failed to prove that her husband, Tony Bogden, was dead at the time she married Martin Hudek, was not capricious or arbitrary, but was a matter of fact to be decided by it, and by it alone, without interference by the court.

Of course, if Anna Bogden was not the lawful wife of Martin Hudek, her children by Joe Zupanovich were not Hudek's stepchildren. While they lived with him during the less than six months that their mother and Hudek lived together,[1] they were supported by him, but they were not members of his household at the time of his death. Hence they were not entitled to compensation under the Workmen's Compensation Act, section 307, par. 9: *Brovdy v. J. & L. Steel Corp.,* 145 Pa. Superior Ct. 602, 21 A. 2d 437.

The judgment of the court below is reversed. The order of the board is reinstated and judgment is directed to be entered pursuant to the order and award of the board.

---

[1] Claimant left Hudek on January 12, 1936 after serious quarrels, took part of her furniture with her, sold some, and left the rest with a friend, and went to Denver, Colorado, where an adult son was living. She stayed there until the summer following Hudek's death. On her leaving, Hudek went to live with a grown son and daughter across the street.