## Vandette, Admx., v. Metropolitan Life Ins. Co.

*Meyer, Brubaker & Lewis*, for plaintiff.

*Bickel & Ehrgood*, for defendant.

EHRGOOD, P. J., April 25, 1951.—This matter is before the court on a motion for a new trial.

Plaintiff instituted an action in assumpsit to recover the sum of $330 with interest on a life insurance policy issued by defendant on the life of Henry A. Yordy. The jury returned a verdict in favor of plaintiff in the sum of $330, with interest from November 10, 1941.

The motion for a new trial was made for the following reasons:

1. The verdict was against the evidence.

2. The verdict was against the weight of the evidence.

3. The verdict was against the law.

4. The verdict was against the charge of the court.

5. The court erred in refusing defendant's motion for a compulsory nonsuit or a directed verdict at the close of plaintiff's case.

6. The verdict, which includes interest from November 10, 1941, is contrary to law in the absence of testimony that Henry A. Yordy encountered some specific peril or came within the range of some impending or imminent danger which might reasonably be expected to destroy life, because the presumption of death arising from his unexplained absence for seven years is a presumption of death at the end of that period and not before.

At the time of argument and in defendant's brief the fourth and fifth reasons assigned for a new trial were abandoned. Wherefore, reasons 1, 2, 3 and 6 will be considered by this court.

The pertinent testimony produced at the trial of the case before Robert R. Lewis, president judge of Potter County, specially presiding, was as follows:

Plaintiff offered in evidence the decree of the Orphans' Court of Lebanon County, Pa., dated August 12, 1949, establishing the legal presumption of death of Henry A. Yordy. Also, paragraphs 1, 2, 3, 4, 5, 6, 7, 8 and 9 of plaintiff's bill of complaint which were not denied in defendant's answer. Briefly, these paragraphs in the bill of complaint are as follows:

1. Plaintiff was appointed administratrix of decedent by the Register of Wills of Lebanon County on August 17, 1949.

2. Defendant is a corporation organized and existing under the laws of the State of New York and duly registered to do business in the Commonwealth of Pennsylvania.

3. On April 9, 1934, defendant executed and delivered to decedent a policy of insurance dated the day and year aforesaid.

4. The face value of the policy to be paid to the executor or administrator of decedent, upon receipt of due proof of the death of decedent, was the sum of $330.

5. That decedent, in his lifetime, paid the stipulated premiums upon the policy and performed all things on his part to be fulfilled according to the terms of the policy.

6. The Orphans' Court of Lebanon County, Pa., in a final decree dated August 12, 1949, established the legal presumption of the death of Henry A. Yordy as of October 10, 1941.

7. On September 19, 1949, plaintiff furnished to defendant a certified copy of the decree of the Orphans' Court of Lebanon County.

8. On October 14, 1949, plaintiff served notice on defendant of the claim of plaintiff, and of the liability of defendant to plaintiff.

9. On October 21, 1949, defendant refused to pay the sum due plaintiff under the policy, and has ever since refused to pay the same.

The answer of defendant under new matter is as follows:

10. "Defendant avers that when the said Henry A. Yordy disappeared on, to-wit, October 10, 1941, he, a married man, and the husband of one Helen Yordy, left with one Anna J. Smith, and his disappearance is, therefore, not an unexplained absence."

11. "The Defendant avers that the said Henry A. Yordy, in a certain case entitled United States vs. Henry Abner Yordy, No. 10693, October Term, 1942, in the District Court of the United States for the Middle District of Pennsylvania, was indicted on, to-wit, October 22, 1942, for a violation of the Selective Training and Service Act of 1940, as amended, on two counts on which the grand jury returned a True Bill, and that on October 30, 1942, the Court signed an Order for a bench warrant authorizing a United States Marshall to accept bail in the sum of one thousand dollars, which bench warrant was duly executed and handed to the United States Marshall, and by him, on

April 29, 1943, returned N.E.I. A certified copy of said bench warrant on, to-wit, April 29, 1943, was likewise handed to the United States Attorney, as by reference being thereunto had will more fully and at large appear. The said Henry A. Yordy is now a fugitive from justice and his continued absence is, therefore, not unexplained."

12. "The Defendant avers that the said policy of insurance provides, inter alia, that the said Metropolitan Life Insurance Company agrees to pay the amount stipulated in the schedule attached to said policy to the executor or administrator of assured 'upon receipt of due proof of death of the insured and upon surrender of this policy and evidence of premium payment hereunder' and that the plaintiff has failed to furnish Defendant with proper proof of such death. . . ."

13. That defendant avers that on October 10, 1941, and prior and subsequent thereto, and when Henry A. Yordy was last seen and heard from, he was not going to or in a place of peril; and further, alleges that Henry A. Yordy neither on October 10, 1941, nor subsequent thereto, was in contact with a specific peril.

The pertinent testimony produced by defendant was as follows:

Henry A. Yordy deserted his wife on October 20, 1941, at about 8 p.m.; on an evening in October 1941 a neighbor, who lived next door to Yordy, in a double house, heard Yordy say to his wife that he had finally found the woman he loved. This witness who had been a neighbor of Yordy's for seven years, and also worked with him, never saw Yordy after that night.

Joyce Mason, the daughter of a woman by the name of Anna Smith, testified that she last saw her mother the latter part of October 1941 and that Yordy was at her house with her mother.

Ruth Vanada, another neighbor of Anna Smith's, testified that Anna Smith had introduced her to Yordy

and that she did not see Anna Smith after October 1941.

Carrie Lux, another neighbor of Anna Smith, testified that she received letters and a telephone call from Anna Smith after she left, from Ohio and New Mexico. The time of the receipt of the letters does not appear in the testimony, and the telephone call was received in the latter part of December 1941.

Mrs. Abner Yordy has since remarried, being Helen M. Vandette; plaintiff, being called by defendant for cross-examination, admitted she heard her husband, Yordy, was running around with an Edna Smith. Mrs. Abner Yordy instituted divorce proceedings against Abner Yordy and a portion of her testimony in this divorce proceeding taken at the hearing on her divorce action was as follows:

"My husband and I got along fairly well together. I can give no reason for his having deserted me except that he was running around with another woman, an Edna Smith, and she went away at the same time my husband did. On the night that my husband left he was sitting with Edna Smith out near the Concentrator plant on Lehman Street, and the car was loaded with things. It is my belief, and every one else thinks, that they went away together. No one to my knowledge has ever heard from either one of them. . . . The day before they left this woman came to the house and wanted to talk to me but I wouldn't talk to her."

Defendant also offered in evidence a certified copy of proceedings in the United States Court for the Middle District of Pennsylvania in the case of United States v. Henry Abner Yordy, which shows that Yordy was indicted for violation of the Selective Service Act and the grand jury found a true bill on October 22, 1942. On October 30, 1942, the court ordered a bench warrant for him, which was returned April 29, 1943,

marked N. E. I. Also, a certified copy of this bench warrant was handed to the United States marshal.

As to the first two reasons assigned in the motion for a new trial, defendant contends that the decree of the orphans' court declaring Yordy a presumed decedent, is only an adjudication of his death prima facie, and that defendant presented sufficient relevant testimony to rebut the presumption of death, which presumption is a rebuttable presumption.

In Wesner's Estate, 139 Pa. Superior Ct. 314, an insurance company, after suit upon an insurance policy, sought to secure the vacation of an order decreeing the presumption of death of the insured with the granting of letters of administration. The court held that under section 6(i) of the Fiduciaries Act, the insurance company had no standing to apply for vacation of the order; it did not offer to show that the insured was alive; the time for appeal on the order had run out. The court held that the order of the orphans' court was admissible in the suit on the policy.

In Wesner's case the Superior Court further held:

"The purpose of the Fiduciaries Act in recognizing the common law rule that there is a presumption of death of a person after seven years from the time when he was last known to be living, was not to supply a procedure to determine whether the person is in fact alive or dead, but to set up a conservator for his property within the State if the facts raise a legal presumption of death."

In the case before us, plaintiff offered in evidence the decree of the Orphans' Court of Lebanon County dated August 12, 1949, establishing a legal presumption of death of Henry A. Yordy, and also the paragraphs set forth in plaintiff's bill of complaint which were not denied in defendant's answer. Thereupon defendant offered testimony to rebut the presumption of death of decedent. That testimony, as hereinbefore

referred to, was to the effect that decedent deserted his wife and departed with Anna Smith in the latter part of October 1941; also that he was under indictment in the United States Court for the Middle District of Pennsylvania for a violation of the Selective Service Act. The trial court charged the jury that they should consider the testimony of defendant's witnesses to determine whether or not it was sufficient evidence to rebut the presumption of decedent's death which was established by the decree of the Orphans' Court of Lebanon County that he is presumed to have died on October 10, 1941.

The trial court further charged the jury as follows:

"Now it is for you to decide whether or not under the circumstances of this case, under the facts given to you here, Henry A. Yordy on October 10, 1941, did depart with Mrs. Smith and whether that accounts for his absence or not. If you feel that that does account for his absence your verdict may very well be for defendant. If you feel that in this long continued absence the Federal Government failed to locate him, or that there is nothing to account for the absence, then there is a presumption of his death, then your verdict should be for plaintiff."

There is no evidence which we can find in the record that Henry A. Yordy knew that an indictment had been presented to the grand jury in the United States district court for a violation of the Federal Selective Service Act. Wherefore, we are of the opinion that it was a fair inference that a search was made by the Federal Government for decedent, the bench warrant having been returned N. E. I., and that this evidence was not sufficient to rebut the prima facie presumption of decedent's death. The only other evidence offered by defendant to rebut this presumption was that he departed with Mrs. Smith at the time aforesaid. As indicated by the trial judge this was a ques-

tion of fact for the jury to determine and their verdict indicates that it did not consider it sufficient evidence to rebut the presumption of death. The evidence produced by defendant's witnesses related to the absence of Anna Smith and there is no testimony in regard to the existence or whereabouts of Henry A. Yordy from the date of his departure except that the United States marshal for the middle district of Pennsylvania could not find decedent for the purpose of serving the bench warrant. Under the circumstances, and in view of the verdict of the jury, we are of the opinion that there was not sufficient competent evidence to rebut the presumption of decedent's death as established by the decree of the Orphans' Court of Lebanon County, as of October 10, 1941, and that, therefore, the verdict was not contrary to the evidence, the weight of the evidence, nor the law in the case.

The additional reason urged for a new trial is that the verdict, which includes interest from November 10, 1941, is contrary to law.

Defendant contends that the verdict, which includes interest from November 10, 1941, is contrary to law in the absence of testimony that decedent encountered some specific peril or came within the range of some impending or imminent danger, which might reasonably be expected to destroy life, because the presumption of death arising from his unexplained absence for seven years is a presumption of death at the end of that period and not before.

It cites Ryan v. Prudential Insurance Company of America, 135 Pa. Superior Ct. 166, which held that the presumption of death arising from the unexplained absence of a person for seven years is a presumption of death at the end of that period and not before. We agree with the contention of defendant that there was not any testimony before the jury from which it could be concluded that Yordy came into

contact with any specific peril prior to or during the seven-year period, and that interest could only be recoverable at the expiration of the seven-year period, namely, on the date that the Orphans' Court of Lebanon County entered its decree establishing the legal presumption of death of decedent, on August 12, 1949. Wherefore, we are of the opinion that the verdict of the jury must be further amended, whereby the verdict should read that: "We the jurors empanelled in the above case find a verdict in favor of plaintiff in the sum of $330, plus interest at six percent per annum from August 12, 1949."

And now, to wit, April 25, 1951, defendant's motion for a new trial is hereby overruled and the prothonotary is directed to enter judgment on the verdict in the sum of $330, plus interest at six percent per annum from August 12, 1949, upon the payment of the jury fee.